Parker
*v.*
Griswold.

## PARKER *against* GRISWOLD.

Where the plaintiff, in an action on the case for the diversion of a water-course, alleged, that the defendant, by means of a dam across the stream above the land of the plaintiff and a channel connected therewith, diverted the water out of its natural course, away from the land of the plaintiff, and prevented the water of the stream from flowing along, in its usual course, to the land of the plaintiff, and supplying the same with water, as it otherwise would have done; and that, by reason thereof, the water of said stream could not, nor did, during the time specified, flow to said land, as it ought to, and otherwise would, have done; and that the plaintiff thereby, for want of such sufficient water, could not, during that time, use his said land, in so large and beneficial a manner, as he might and otherwise would have done, but was thereby, during said time, deprived of the use and enjoyment of his said land, and of all the benefits and advantages, which he otherwise might and would have derived from said land; it was held, 1. that a sufficient cause of action was shown, although the declaration did not aver the existence of any mill or other works of the plaintiff on his land, for the operation of which the water so diverted was needed; 2. that the statement of damage to the plaintiff was made with sufficient particularity.

The plaintiff owned land, bordered, on one side, by a natural stream of water. The defendant owned land, with a mill thereon, on the opposite side of the stream and bordered by it, below the plaintiff's land. Under an authority obtained from the proprietors of the land on both sides of the stream above the plaintiff's land, the defendant erected a dam there, and cut a channel therefrom to the mill upon his land, through which a portion of the water was diverted from the stream, producing a material diminution thereof, and was not returned to it until after it had passed the plaintiff's land. Held, 1. that the defendant could not justify such diversion, either by virtue of the authority derived from the proprietors above, or by virtue of his general rights as riparian proprietor below; 2. that the plaintiff was not precluded from an action for such diversion, because he owned the land only on one side of the stream and to its centre; 3. that he was entitled to a recovery in such action, without proving that any perceptible actual damages was sustained by him; because every injury, from its very nature, legally imports damage, and because an infringement of a right is a damage to the person entitled to that right, by jeoparding its continuance, and leading to its destruction.

Where the plaintiff in such action offered, as a witness for him, the owner of a parcel of land, bordering on the same stream, and lying between the plaintiff's land and the place where the water so diverted was returned into its natural course, who was objected to, on the ground of interest; it was held, that such person was a competent witness, his interest being only in the question, and not in the event of the suit.

Where the plaintiff in such action, in support of a claim of special damage, by the diminution of the water in the stream, introduced evidence to show, that it would not now, as formerly, constitute a barrier for his young cattle and family, and answer the purpose of a fence; after a verdict for the plaintiff, with nominal damages only, it was held, that the reception of such evidence, whether it was proper to go to the jury or not, furnished no ground for a new trial, as it had resulted in no injury to the defendant.

THIS was an action on the case for the diversion of a water-course.

New-Haven, July, 1845.

Parker
v.
Griswold.

The declaration stated, That the plaintiff being lawfully possessed of a certain parcel of land, with the appurtenances thereof, situated in *Meriden*, containing 18½ acres, bounded &c. and by reason thereof, being entitled to have and enjoy the benefit and advantage of the water of a certain stream or water-course, which ought to have run and flowed, and until the diversion thereof hereinafter mentioned, of right had run and flowed, and still of right ought to run and flow, unto said land of the plaintiff, the defendant, well knowing the premises, but contriving and intending to injure the plaintiff, and to deprive him of the use, benefit and advantage of the water of said stream, on the 12th day of *September*, 1837, and on divers other days and times between that day and the date of the writ, wrongfully made and placed a dam and obstruction across said stream above said land of the plaintiff, and the defendant cut and dug, at and near said dam, and in and out of the side of said stream, a sluice, trench or channel, of the depth of six feet and of the width of four feet; and kept and continued said dam, and said sluice, trench or channel from thence hitherto; and the defendant thereby unlawfully and wrongfully diverted and turned large quantities of the water of said stream or water-course out of the ordinary and natural bed thereof, and away from said land of the plaintiff, and stopped and prevented the water of said stream or water-course from running or flowing, along its usual course, to said land of the plaintiff, and from supplying the same with water, as the same ought to have done, and would otherwise have done; and by reason thereof, the water of said stream or water-course, could not nor did, during all or any part of that time, run or flow to the same, as the same of right ought to have done, and would otherwise have done; and the plaintiff thereby, for want of such sufficient water, could not, during that time, use his said land in so extensive and beneficial a manner, as he might and would otherwise have done, but was thereby, during all that time, deprived of the use and enjoyment of his said land, and of all the benefits, profits, gains and advantages, which he otherwise might and would have made and derived from said land.

The defendant pleaded the general issue; on which the

Parker
v.
Griswold.

cause was tried, at *New-Haven, October* term, 1844, before *Williams*, Ch. J.

On the trial, the plaintiff claimed, that at the time alleged in the declaration and ever since, he was the owner and in possession of the land described in the declaration lying upon and bounded by the stream therein described, and that his son, *Daniel L. Parker*, owned a lot of land next below, bounded also upon that stream, in the same manner.

It was also claimed, and not denied, that the defendant owned and possessed a lot of land on the same stream, and on the other side thereof, below that of the plaintiff; and that the defendant, on his land below the lots above-mentioned, about a year since, had erected a mill, with machinery, for manufacturing purposes, which he has ever since continued; and for the purpose of supplying this mill with water, the defendant built, about that time, a dam across said stream, a little above the land of the plaintiff, purchasing of the proprietors on both sides of the stream a right to erect said dam, and to draw the water, by means of a canal or sluice-way, through the lands of the proprietors above the plaintiff, so that the defendant might take such part of the stream as he wanted for the use of his mill below; and that the defendant had cut such a ditch or canal so as to divert the water from the stream so that it could not pass by the plaintiff's land, in its accustomed course; but that the defendant used it for his purposes, at his mill, and thus turned the water back into the river below the lands of the plaintiff, and of his son *Daniel L.*, after they were used for the purposes of his mill. As to the quantity of water so diverted, the parties differed.

The plaintiff claimed, that one third, or one quarter, of the stream was thus diverted from his land, and its accustomed course; that there was a fall in the stream, near and upon his land, where once was a dam, and a valuable mill privilege of his, which was thus greatly injured and endangered; and that the defendant claimed a right thus to divert the water for his purposes, in opposition to the rights of the plaintiff.

The defendant claimed, that the plaintiff had no such privilege, as he owned the land only on one side of the stream, and that very little water was thus diverted from his land, so that the surface of the stream was not lowered more than from one third to one half an inch. The defendant also

*New-Haven,*
July, 1845.

Parker
*v.*
Griswold.

claimed, that as riparian proprietor, he had a right to the reasonable use of this stream of water for his manufactory; and that he had only so used it; and if thereby no perceptible or substantial damage was done to the plaintiff, he could not recover.

The court however did not charge the jury as claimed by the defendant, but instructed them, that such riparian proprietor had a right to have the water flow by and over his land, in its accustomed manner, and that this right is inseparable from the soil; but that the proprietor above might use the same in a reasonable manner, for culinary, agricultural or manufacturing purposes, returning the same, after such use, into the stream again, without being answerable for the portion wasted, by such reasonable use. But that the proprietors above had no right to divert the water, so that it should not return to the stream so as to pass over and by the lands of the proprietor below; and if they had not that right, they could not convey such right to the defendant: and if in such diversion of the water by the defendant, the right of the plaintiff to the flow of such water was thereby put in jeopardy, he might recover therefor of the defendant, though no perceptible actual injury was sustained by him.

The plaintiff also claimed a special damage, by the diminution of the water in the stream, so that it would not now prove a barrier for his young cattle and family, and answer the purpose of a fence. This the defendant denied; and much evidence upon one side and the other, was offered.

And the defendant asked the court to charge the jury, that if that fact was proved, the plaintiff could recover no damages therefor, under the general allegations in his declaration.

But the court charged them, that in this stage of the cause, it was too late to make this objection; and that it could not have been sustained, if made earlier :—And that if the jury should find that fact to be proved, they ought to give the plaintiff fair compensation for such injury.

In the course of the trial, the plaintiff offered his son, *Daniel L. Parker*, above named, as a witness; to which the defendant objected, on the ground that he was interested to establish the right claimed by the plaintiff. But the court overruled the objection, and admitted the witness.

A verdict was returned for the plaintiff with nominal dam-

New-Haven.
July, 1845.
————
Parker
v.
Griswold.

ages; and the defendant, claiming that the court erred, in admitting the witness, and in the opinion given to the jury, moved for a new trial. The defendant also moved in arrest of judgment for the insufficiency of the declaration. The questions arising on both motions were reserved for the advice of this court.

*R. I. Ingersoll* and *Mix*, in support of the motions, contended, 1. That the declaration was insufficient. It states no special right and no special damage; no overflowing of land, no stopping of machinery. It states no legal damage, and shows no ground of action. It does not even aver, that any right of the plaintiff was jeoparded. *Williams* v. *Morland*, 2 *B. & Cres.* 910. (9 *E. C. L.* 269.) It is also without precedent. 2 *Chitt. Pl.* 289. n. y. 2 *Sw. Dig.* 240, 41. In all the *Connecticut* cases, from *Sherwood* v. *Burr*, 4 *Day*, 244. to *Wadsworth* v. *Tillotson*, 15 *Conn. R.* 366. some *legal damage* is alleged. From the nature of the action on the case, there must be *a consequential injury;* and if so, it must be alleged. 1 *Sw. Dig.* 539, 40. 2 *Chitt. Pl.* 789. n. In this declaration, no such consequential injury is alleged, nor what amounts to it.

2. That the charge was erroneous. In the first place, it assumes that the defendant was at all events bound to return the water, after he had used it, so as to pass the plaintiff's land. This is not law; and is directly opposed to the doctrine in *Wadsworth* v. *Tillotson*, 15 *Conn. R.* 366. 369. 372. The question is *reasonable use*, whether the water is returned or not. Secondly, the charge was erroneous, in stating, that the plaintiff could recover *without showing perceptible actual injury*. This is against the whole current of *Connecticut* decisions, and is inconsistent with the nature of the action on the case, which requires, as already stated, an actual consequential injury. *Sherwood* v. *Burr*, 4 *Day* 244. *Ingraham* v. *Hutchinson*, 2 *Conn. R.* 584. *King* v. *Tiffany,* 9 *Conn. R.* 162. *Twiss* v. *Baldwin, Id.* 291. *Buddington* v. *Bradley*, 10 *Conn. R.* 283. *Tucker* v. *Jewett*, 11 *Conn. R.* 311, 322. *Chapman* v. *The Thames Manufacturing Company*, 13 *Conn. R.* 269. This is also the clear *English* law. *Bealy* v. *Shaw*, 6 *East* 208. 214. & seq. *Williams* v. *Morland*, 2 *B. & Cres.* 910. (9 *E. C. L.* 269.) *Mason*

v. *Hill*, 3 *B.* & *Adol.* 304. (23 *E. C. L.* 76.) 1 *Chitt.
Gen. Pr.* 189. 192. 2 *Chitt. Pl.* 789. Thirdly, the charge was erroneous in asserting a right to recover without actual injury, if the plaintiff's right to the flow of the water was *put in jeopardy.* This doctrine is directly opposed to the decision in *Wadsworth* v. *Tillotson.* It was there, indeed, distinctly overruled. Jeopardy of the right was there held to be *subordinate* to the question of reasonable use by the defendant. This doctrine of suing for jeopardy of right, is untenable; would be highly inconvenient, in respect to water-rights, preventing the use designed by nature; and inconsistent with the common rights of all the bank owners to a reasonable use. Water is *publici juris.* 3 *Kent's Com.* 439. & seq. (2nd ed.) The doctrine in question will not apply even in case of a *prescriptive* right, which this is not. 11 *Conn. R.* 311. 325. The case of *Chapman* v. *The Thames Manufacturing Company*, was a case of prescriptive right, and of substantial injury; a very different case from this; and the remarks there about jeopardy of right were unnecessary to the decision. In *Wadsworth* v. *Tillotson*, the court, in view of the decision in *Chapman* v. *The Thames Manufacturing Company*, say, " it admits of a question on which side is the weight of authority." 15 *Conn. R.* 372. That case is "on all fours" with this, and decides that between bank owners the question of *reasonable use* is paramount to all others; and that the defendant has a right to have it submitted to the jury. That decision governs this case; or this part of the charge overrules that decision.

3. That no evidence of damage from cattle feeding, should have been received. The defendant was not apprised, by any allegations in the declaration, of such a claim.

4. That *D. L. Parker* should have been excluded as a witness. He appears from the motion to be interested. He claims, or may claim, a right, on the same ground. *Jebb* v. *Povey*, 2 *Esp. R.* 679. 3 *Stark, Ev.* 1676.

*Baldwin* and *C. A. Ingersoll*, contra, contended, 1. That every proprietor of land through which a natural watercourse runs, has a right inseparably annexed to the soil, to the use of the water, for any useful purpose, to which it can

be applied, as it is wont to run, without diminution or alteration.

2. That as each proprietor has a right to have the water flow, as it is wont to run, it follows, that he who prevents the water from thus flowing, deprives such proprietor of a right. And if the water is thus prevented from flowing, by an act, committed not in the exercise of a right, he who commits such act, unlawfully deprives such proprietor of a right. He is guilty of a *wrong;* for which wrong the proprietor thus deprived of a right, is entitled to redress, by action.

3. That he who diverts the water of a natural stream, so that it does not return into the natural channel, upon the land of the lower proprietor, does an act which he has no right to do. He thereby commits a wrong, for which such lower proprietor, from whose land the water is diverted, is entitled to redress. No right exists in the upper proprietor to divert the water, so that it shall not pass the land of the lower proprietor. True it is, he has a right to use, and reasonably to consume, the water, for domestic and culinary purposes, and for watering his cattle. He has also a right to use the water for manufacturing purposes; he returning it, after it has been thus used, into the stream, before it reaches the land of the lower proprietor; but he has no right to divert it, so that it shall not thus return. The diversion is a wrong; is a deprivation of a right; and it being a wrong, the wrong-doer is by law liable to an action. *Blanchard* v. *Baker*, 8 *Greenl.* 253. *Bealey* v. *Shaw,* 6 *East* 208. 3 *Kent's Com.* 439. n. *a.* (4th ed.)

4. That where there is a *diversion* of water, there is no such thing as a *reasonable use* to be submitted to the jury. The diversion is a wrong; and there is no such thing known in law as a reasonable wrong. When a party is sued for an unreasonable exercise of a right, or for the exercise of it in an improper manner, the question is submitted to the jury, whether that right has been exercised in a reasonable or proper way. But where there has been a diversion, where the water has been taken from the stream and not returned, and such taking is not for domestic or culinary purposes, or for watering the proprietor's cattle, such taking is an unlawful taking, is a wrong,—declared to be a wrong by law; and if, in contemplation of law, it is a wrong or deprivation of

right, the jury are not to determine upon the reasonableness *New-Haven,*
or unreasonableness of such a wrong. *July, 1845.*

Parker
*v.*
Griswold.

5. That the plaintiff was entitled to recover, although he had proved no actual damages. If he had a right, which he had been deprived of, by the wrongful act of the defendant, he had a remedy to be restored to that right, by an action at law. Damages necessarily follow for the violation of a legal right. *Blanchard* v. *Baker,* 8 *Greenl.* 253. *Patrick* v. *Greenway,* cor. *Lawrence,* J. 1796, 1 *Wms. Saund.* 346. *b.* n. 2. *Hobson* v. *Todd,* 4 *Term R.* 71. 73. *Mason* v. *Hill,* 3 *B. & Adol.* 304. (23 *E. C. L.* 76.) *S. C.* 5 *B. & Adol.* 1. (27 *E. C. L.* 489.) 3 *Kent's Com.* 439. and n. *Bolivar Manufacturing Company* v. *Neponset Manufacturing Company,* 16 *Pick.* 241. *Webb* v. *Portland Manufacturing Company,* 3 *Sumn.* 189. *Crooker* v. *Bragg,* 10 *Wend.* 260. *Allaire* v. *Whitney,* 1 *Hill* 484. 487. 13 *Conn. R.* 274. per *Sherman,* J. *Hine* v. *Robbins,* 8 *Conn. R.* 342.

6. That *Daniel L. Parker,* the son of the plaintiff, who owned a lot of land next below the plaintiff, on the same stream, was a competent witness. He was not interested in the event of the suit, or in the record. It is different from the case of a commoner, claiming by prescription, which presupposes a grant, where he prescribes for a right of common for himself and others ; in which case, others, claiming by the same prescription, cannot testify. 2 *Stark. Ev.* 392. 748. 3 *Stark. Ev.* 1676. *Greenl. Ev.* 450. 451.

7. That the defendant has nothing to complain of, in that the court refused to charge the jury, that the evidence given to prove special damages by the diminution of the water in the stream, so that it would not form a barrier for the plaintiff's young cattle, and answer the purpose of a fence, could not be received by them. In the first place, the exception was taken too late. The evidence was not objected to, at the time it was offered. Secondly, if it had been objected to in season, it would have been of no avail ; for the evidence was proper. Thirdly, if it was not proper, the defendant has not been prejudiced, by its introduction. No special damages were given by the jury: they gave nominal damages only.

STORRS, J. The first question in this case, arises upon the

Parker
*v.*
Griswold.

motion in arrest of judgment, and respects the sufficiency of the declaration.

On comparing this declaration with the most approved precedents, in such cases as the present, there is an exact conformity between them as to the principles on which they are framed, and the variation between them is of a merely circumstantial character. Most of the precedents in the books differ from this circumstantially, because they state the existence of a mill or other works of the plaintiff on his land, and that the same was worked by the water of the stream flowing through or past the land, whereas in the declaration before us, it is not alleged that the plaintiff had any mill or other establishment on his premises, probably because such an allegation would not be adapted to the case. The omission to state, that the plaintiff had any such works, which were operated by the water of the stream, is of no importance, if, independent of that circumstance, the declaration shows enough to constitute a legal right to the use of the stream, and a violation of that right, by the alleged acts of the defendant ; and that these are sufficiently shown, we think there is no doubt. It is correctly claimed by the defendant, that it is not sufficient to allege merely, that a less quantity of water comes to the plaintiff's land, in consequence of the acts of the defendant specified. It is undoubtedly necessary to state further, that a damage has accrued to the plaintiff from such loss. In this declaration, however, the plaintiff alleges, not only that the defendant, by the acts detailed, diverted and turned large quantities of the water of the stream out of its ordinary and natural channel, and away from the land of the plaintiff, and prevented the water of the stream from flowing along in its natural course to the land of the plaintiff, and supplying the same with water, as it otherwise would have done ; and that, by reason thereof, the water of said stream, during the time therein specified, could not, nor did, run or flow to said land, as it ought to, and otherwise would, have done ; but it proceeds to state further, that the plaintiff thereby, for want of such sufficient water, could not, during that time, use his said land, in so large, extensive and beneficial a manner, as he might and otherwise would have done, but was thereby, during said time, deprived of the use and enjoyment of his said

land, and of all the benefits, profits, gains and advantages, which he otherwise might and would have derived from said land.

New-Haven,
July, 1845.

Parker
v.
Griswold.

It is objected also, that no special damage to the plaintiff is here stated : in other words, that it is not set forth in what manner the plaintiff has sustained damages, by the acts of the defendant. The allegation that the plaintiff, in consequence of such acts, could not enjoy his land as beneficially as he otherwise might, and that he was deprived of the use and profits thereof, is as particular, however, as the statement of damage in most of the precedents ; and no case has been cited, which requires more particularity. Where there is a mill on the plaintiff's land, and he is injured by the water being set back upon it, or unreasonably withheld from it ; or if there is no mill on it, and the land is overflowed by the defendant ; it is only necessary to allege the fact of such setting back, withholding or overflowing, and that, by reason thereof, the plaintiff could not enjoy his mill or his land as beneficially as he otherwise might have done, without more particularly describing the damage ; and so are the precedents. In *Brown* v. *Best*, 1 *Wils.* 174. which was an action for diverting a water-course from the plaintiff's land, on which no mill or other establishment had been erected, it was only alleged, that in consequence of the diversion, the water was prevented from coming to the plaintiff's grounds. *Lee*, Ch. J., was of opinion, that the declaration was "very good;" and *Dennison*, J. said, that whatever the precedents may be in regard to water-courses to *mills*, yet as to *natural water-courses*, this is the most proper way of declaring. The form adopted and sanctioned in that case, fully supports the declaration in the present. A legal damage being alleged in the declaration, if indeed it were stated so defectively or informally that it would be insufficient on demurrer, still it would probably be cured by the verdict, since it is presumable that the court would not instruct the jury to give, and that they would not have given, damages, unless some damage had been proved on the trial. The question as to what would be a legal ground for assessing damages under this declaration, does not properly arise on the enquiry on the motion in arrest for the insufficiency of the declaration, but on the charge of the court. The declaration, therefore, is

sufficient; and the motion in arrest should be overruled. We are next brought to consider the questions arising on the motion for a new trial.

In order to ascertain what points arise on the motion, it is necessary to look at the facts conceded, or offered 'to be proved, on the trial, with the respective claims of the parties there made. It appears from the motion, that the plaintiff being the owner and in possession of a piece of land bordering on the stream in question, and the defendant being the owner of another piece of land below the plaintiff's bordering on the opposite side of said stream, the defendant, under an authority obtained from the proprietors of the land on both sides of the stream above the land of the plaintiff, erected a dam on the land of said upper proprietors, and cut a ditch or sluice therefrom on their land, to the defendant's mill upon his land, by which the water was turned from the stream, in such a manner that it did not pass by the plaintiff's land in its accustomed course, but was diverted from it; and that the water thus diverted was returned through said ditch or sluice into the stream below the plaintiff's land. As to the quantity of water so diverted, the parties differed. The plaintiff claimed, that there was a fall and valuable mill privilege upon the stream near and upon his land, which, by such diversion, was greatly injured and endangered; and that the defendant claimed the right thus to divert the water for the purposes of his mill, in opposition to the rights of the plaintiff. The defendant claimed, that the plaintiff had no such privilege, because he owned the land only on one side of the stream; that he, the defendant, had, as a riparian proprietor, a right to the reasonable use of the water of the stream for his mill; and that he used it only reasonably; and that no perceptible or substantial damage had been done to the plaintiff, by such diversion; and therefore, that the plaintiff could not recover. It does not appear, that there was any controversy between the parties on the question, whether the stream was capable of being beneficially used upon the plaintiff's land. On the contrary, as the defendant did not deny that it might be so used, but merely claimed, that the plaintiff owned the land on one side of the stream only, and therefore, that he had not such an interest in the mill privilege as to give him a right to an action for an injury thereto,

*New-Haven,*
July, 1845.

Parker
*v.*
Griswold.

it is fair to assume, that he conceded that the water was capable of being usefully appropriated at that place. The case, therefore, is not one where a proprietor bounding on a stream, seeks to recover for a diversion of it from his land, when the water, if not so diverted, could not have been used for any beneficial purpose. But it is a case where there is a material diminution of a stream, by a diversion of it above the land of a proprietor bordering on it below, where it was capable of being beneficially used by such lower proprietor on his land, and where such diminution is not necessarily occasioned by or incident to the reasonable use of the stream, by the propietor above, on his land, or any one by his authority. There was not a diversion of the water here, in that loose sense in which that term might be used to denote that incidental abstraction or loss of the water, which is necessarily consequent upon the lawful use of it, for which, as was decided in *Wadsworth* v. *Tillotson*, 15 *Conn. R.* 366. an action could not be maintained, by the proprietor below; nor was there a mere interruption of the water, so that it was only delayed in arriving at the plaintiff's land; but it was a *diversion* of the stream from his land, in what may be called the technical sense of that word, which denotes the turning of the stream, or a part of it, as such, from its accustomed direction,—its natural course,—so that the water thus diverted never reached the land of the plaintiff, and therefore, could not be used by him, as it might have been, were it not for such diversion.

The first question is, whether (supposing that the plaintiff is not precluded from recovering by reason of his owning the land only on one side of the stream,) the defendant had a right thus to divert the stream from the plaintiff's land. It is to be observed, that in this case, the parties claim only the natural right to the use of the stream growing out of their ownership of the land through or past which it flows, and not any other right therein or thereto acquired by grant or otherwise. It would seem, that the mere statement of the general rights of riparian proprietors to the use of natural water-courses, as found in all the authorities, furnished a plain and decisive answer to this question. They are thus stated by Chancellor *Kent*, with great precision: "Every proprietor of lands on the banks of a river, has naturally an

equal right to the use of the water which flows in the stream adjacent to his land, as it was wont to run, (*currere solebat,*) without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprietors above or below him, unless he has a prior right to divert it, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct as it passes along. *Aqua currit et debet currere,* is the language of the law. Though he may use the water, while it runs over his land, he cannot unreasonably detain it, or give it another direction; and he must return it to its ordinary channel when it leaves his estate. Without the consent of the adjoining proprietors, he cannot divert or diminish the quantity of water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above, without a grant, or such an uninterrupted enjoyment as is evidence of it. This is the clear and settled doctrine on the subject." 3 *Kent's Com.* 438. (3d ed.) And this right of the riparian proprietor is annexed to the soil, and is parcel of the land itself. 15 *Conn. R.* 366.

In the present case, the water was diverted from the plaintiff's land, by the defendant, who was a riparian proprietor below him. There is no ground on which, as such proprietor, the defendant had a right thus to divert it. Each of them having a right to the use of the water in its natural stream, without diminution or alteration, had a right that it should flow *ubi currere solebat;* and consequently, neither of them has a right to prevent it from flowing over the land of the other. The defendant, therefore, can justify the diversion of it in this case, if at all, only under the right of the proprietor above the plaintiff, whose rights he acquired, and by whose authority he acted. If then such proprietor could not justify the diversion complained of, neither can the defendant. And that such proprietor had no right to divert the stream, and thus prevent it from flowing to the plaintiff's land, is most clear from the principles which have been stated. If he had used the water upon his land, as he might have done, in a reasonable manner, for proper purposes, it would have been his duty to return it to the stream, so that it would run in its natural channel when it reached the land of the plaintiff; and any one acting under him is liable to the

New-Haven,
July, 1845.

Parker
v.
Griswold.

same obligation. These are the precise principles embraced in the charge of the judge on the trial of this cause.

The next question is, whether the plaintiff is precluded from an action for a diversion of the water from his land, because he owns the land only on one side of the stream and to its centre. A right to the use of a stream being inseparably annexed and incident to the land over which it flows, it follows, that it is illegal to divert it from that land. This principle applies, whether the proprietor owns the whole, or a part only, of the bed of the stream. Hence it is laid down, that where a stream of water is the boundary line between the land of two persons, neither can divert any part of the water without a licence from the other. *Angell on Water-Courses*, 30. In *Curtis* v. *Jackson*, 13 *Mass. R.* 507. it was decided, that a proprietor of land on one side of a stream, could not divert it, unless he had obtained a right to do so, by grant, or by such a usage as would be evidence of a grant ; and that, if such proprietor had so acquired the exclusive right to use all the water, when there was not sufficient water to work the mills on both sides of the stream, that would not be a sufficient justification for erecting a permanent obstruction in the stream, which might be injurious to the opposite proprietor, beyond the extent of such grant or usage. The same principles are fully recognized and sanctioned, in *Blanchard* v. *Baker*, 8 *Greenl. R.* 253. and in *Webb* v. *The Portland Man. Co.* 3 *Sumn. R.* 190. An owner to the centre of the stream only, may not be able to use the water so beneficially, as if he owned on both sides of the stream, because it might be disadvantageous to him that he could not extend his dam to the bank opposite his land, without obtaining permission from the owner of that bank. The question, however, is not, whether he could use the water more or less beneficially, but whether he could use it beneficially at all ; and this he plainly could do, although his land extended only to the centre of the stream. He might, for instance, use it for milling or manufacturing purposes, by means of a diagonal or wing dam, as is not unfrequently done. If, moreover, a proprietor on one side only of a stream could not sustain an action for a diversion of it, or for any other injury to his right, the result would be, that such injuries would be wholly remediless ; for the opposite proprietor would be bar-

red of an action for the same reason; and they could not unite in an action, because they have no joint right, each having a several interest, by virtue of his several ownership of the lands respectively over which the stream flows. This point, however, has not been strenuously urged, by the defendant; nor has any authority been referred to by him, in support of it.

The remaining question, on this branch of the case, is, whether the court below was correct, in charging the jury, that the plaintiff was entitled to recover, although no perceptible, actual damage was proved to be sustained by him.

In this case, the defendant, for the period of about twelve years, had diverted the stream from the plaintiff's land, claiming a right so to do, in opposition to the rights of the plaintiff. This diversion, as has been already shown, was an invasion of the rights of the plaintiff; and by our law, if continued for the period of fifteen years, would confer a prescriptive right upon the defendant so to divert the stream.

Whatever doubt may have been entertained formerly upon this subject, it is now settled, by the uniform course of decisions, both in *England* and in this country, that where one has a right to the use of a stream naturally flowing through his land, capable of being used for a beneficial purpose, and it is diverted therefrom by another, it is not necessary for the person having such right, in an action for such diversion, to prove, that he has actually applied the water running through his land for any beneficial purpose; or, in other words, that he sustained any specific damage by such diversion, interfering with his application of the water; but that he has a right to recover, notwithstanding he has sustained no perceptible or actual damage by such diversion. And we think, that these decisions rest on the most satisfactory reasons. They proceed upon two grounds; first, that every injury, from its very nature, legally imports damage; and, secondly, that an injury to a right is a damage to the person entitled to that right, by jeoparding its continuance, and leading to its very destruction.

An injury, legally speaking, consists of a wrong done to a person, or, in other words, a violation of his right. It is an ancient maxim, that a damage to one, without an injury in this sense, (*damnum absque injuria,*) does not lay the foun-

*New-Haven,*
*July, 1845.*

Parker
*v.*
Griswold.

dation of an action ; because, if the act complained of does not violate any of his legal rights, it is obvious, that he has no cause to complain. But as an injury or violation of his right necessarily imports damage, there can be no such thing as an injury without damage. An injury is a wrong ; and for the redress of every wrong there is a remedy : a wrong is a violation of one's right ; and for the vindication of every right there is a remedy. Want of right and want of remedy are justly said to be reciprocal. Where therefore there has been a violation of a right, the person injured is entitled to an action. If he is entitled to an action, he is entitled at least to nominal damages, or else he would not be entitled to a recovery. Such damages are given, in order to vindicate the right which has been invaded ; and such further damages are awarded as are proper to remunerate him for any specific damage which he has sustained. It is upon this principle that a person may sustain an action of trespass for an unauthorized entry upon his land, although he shows no actual specific damage to have thereby accrued to him ; or even although the defendant may prove, that such act was beneficial to the plaintiff. The law implies a damage from the injury, or violation of the right of the plaintiff. We see the same principle constantly applied in the personal actions which come before our courts. In many of these cases, the injury complained of, although it may be attempted to be justified in the particular instance, is not committed under any general claim of right or title in the defendant, and no damage accrues, except that which is actually consequential from the act complained of. But in many instances, the act is committed under a claim of right in the aggressor. In such cases, the injury is to the right itself which is thus claimed ; and it tends to the absolute destruction and extinction of such right, because the person entitled to it would be divested of it, by a continued and uninterrupted repetition of such injury for a certain length of time. The hazard in which the right is placed by such injuries, presents a case of damage more palpable and substantial than in those where there is no other damage than that which is merely implied by law, and which seems to exist only in legal contemplation, and one in which it is obvious that it is eminently just, and proper, and necessary, that an action should be sustained, not only for its

vindication, but for its preservation. The act complained of, in such a case, is an actual damage to the plaintiff, because it constitutes one of a series of similar acts, which, continued for a certain length of time, under such claim of right, will deprive the plaintiff of his property.

The principle that every injury legally imports damage, was decisively settled, in the case of *Ashby* v. *White,* 2 *Ld. Raym. R.* 938. *S. C. Holt's Rep.* 524. 6 *Mod.* 45. 1 *Bro. Parl. Cas.* 45. (or *p.* 62. *Toml.* ed.) than which no case was ever more elaborately discussed, or maturely considered. Indeed, it will be found, that it was not questioned in the court of *King's Bench,* by those judges who decided the case in that court against the opinion of *Holt,* C. J. (whose opinion prevailed in the House of Lords,) but in their judgment, that principle was not applicable to the case before them. It is only necessary to refer to the cases cited by Lord *Holt* in support of his opinion. Suffice it to say, that they fully sustain the principle which has been stated, and on which that case was finally decided. The same principle is explicitly recognized, in the note by Mr. Serjt. *Williams* to *Mellor* v. *Spateman,* 1 *Saund. R.* 346. *a.* n. 2. *Wells* v. *Watling,* 2 *W. Bla. R.* 1239. *Weller* v. *Baker,* 2 *Wils. R.* 414. and *Pindar* v. *Wadsworth,* 2 *East's R.* 162. and is directly established, in *Hodson* v. *Todd,* 4 *Term R.* 71. and *Marzetti* v. *Williams,* 1 *Barn.* & *Adol.* 415. (20 *E. C. L.* 412.) In *Hodson* v. *Todd,* which was an action on the case, by one commoner against another, for surcharging the common, the plaintiff proved, that the defendant had so surcharged; but it appearing that the plaintiff had also surcharged to a greater amount than the defendant, the plaintiff was non-suited, upon which a new trial was granted. The court decided, in that case, that the defendant was liable to an action at the suit of the plaintiff, on two grounds; first, that the acts of the defendant constituted a legal injury to the plaintiff, which entitled the latter to recover, although no specific damage was proved; and, secondly, that the right of the plaintiff was injured by those acts, which was sufficient to sustain the action, on the ground that, being wrongful, they would, in process of time, become evidence of a right in the defendant. The same principles were subsequently sanctioned in *Pindar* v. *Wadsworth.* Some of the old cases, decided long before

*Ashby* v. *White*, are opposed to the doctrine of that case; but none of the modern *English* cases, critically examined and properly understood, militates against it, although some of them appear, at first view, to countenance a different doctrine. This is shown most satisfactorily, by Lord Ch. J. *Denman,* in *Mason* v. *Hill,* 5 *Barn. & Adol.* 1. (27 *E. C. L.* 11.) where those cases are minutely examined. That, like the present, was an action brought for the diversion of water, in which the question now before us was raised by the the counsel ; and although it was not deemed in that case necessary to decide the question, Lord *Denman* concludes, by very significantly saying, that it must not be considered as clear, that an occupier of land may not recover for the loss of the general benefit of the water, without a special use or damage shown. In the subsequent case of *Bowen* v. *Hill,* 1 *Bing. N. C.* 549. (27 *E. C. L.* 489.) decided in 1835, this point, as applicable to injuries to water-courses, appears to be directly settled and put at rest in *England.* In that case, the plaintiff had a right of passing from his close to the river *Nere,* through a navigable channel, over the lands of the defendants and others, which lay between the plaintiff's close and the river. The channel had been filled up between the plaintiff's land and that of the defendants, by the operation of natural causes, so as to be un-navigable, and the defendants had made a bridge or tunnel between their land and the river, that would have destroyed the navigation, had those obstructions been removed. But they were still in existence ; and the jury found, that " before the erection of the bridge by the defendants, the passage was obstructed, so that the plaintiff could not have the use of it." It was held, that the plaintiff was entitled to recover. *Tindal,* Ch. J., in giving the opinion of the court, says : " It is no excuse that the plaintiff has voluntarily suffered an accretion of the mud, which he might have removed, at any time when he thought fit. The voluntary suspension by the plaintiff of his exercise and enjoyment of a right, can form no justification to the defendants for preventing him from the possibility of enjoying it." " If acquiesced in for twenty years, it would become evidence of a renunciation and abandonment of the right of way." The same principles have been repeatedly adopted in the courts of this country, as will appear by a reference to the following cases, and are sanctioned here by the undoubted

weight of authority. *Webb* v. *The Portland Man'g. Co.,* 3 *Sumn.* 190. *Blanchard* v. *Baker,* 8 *Greenl.* 253. *Crooker* v. *Bragg,* 10 *Wend.* 260. *Allaire* v. *Whitney,* 1 *Hill,* 487. *Bolivar Man'g. Co.* v. *Neponset Man'g. Co.* 16 *Pick.* 241. *Whipple* v. *Cumberland Manufacturing Co.,* 2 *Story's R.* 661. *Butman* v. *Hussey,* 3 *Fairf. R.* 407. *Kelham* v. *Ward,* 2 *Mass. R.* 236. *Lincoln* v. *Hapgood,* 11 *Mass. R.* 350. No case has arisen in this state, in which it has become necessary to decide the question, as applicable to the right of using running water, whether a recovery can be had, without proof of some actual specific damage ; but in *Chapman* v. *Thames Man'g. Co.,* 13 *Conn. R.* 269. *Sherman,* J. in giving the opinion of the court, lays it down as a correct principle, that " an act which occasions no other damage than putting at hazard those rights, which, if the act were acquiesced in, would be lost by lapse of time, is a sufficient ground of action ;" and illustrates it, by the case of drawing a seine in the several fishery of another, which, although no fish are taken, entitles the latter to damages, merely on the ground that a repetition of such acts, if acquiesced in for fifteen years, would divest the proprietor of his rights.

With respect to the claim made by the counsel for the defendant, that the plaintiff, to entitle himself to a recovery, must show, not only a right to use the water of the stream in question, but that he was, at the time of the injury complained of, actually applying it to some beneficial purpose, although there may be some very ancient cases and *dicta* in the books, which appear to countenance this claim, it is not supported by the modern authorities, and in several of the most recent cases, it has been expressly rejected. That of *Bowen* v. *Hill,* before cited, is directly in point on this question. *Angell on Water-Courses,* 50. If, as is undoubtedly true, the right of the owner of land to the use of a stream running through it, would be lost, by an adverse user and claim for a particular time, while the water remains unappropriated by such owner, it is incomprehensible how an appropriation of it by him can be necessary, in order to vindicate his rights by suit. If indeed such adverse user would not, while it was thus unappropriated, ripen into an adverse right, there would be much reason for the claim of the defendant. And if the right of such owner continues to exist, as it undoubtedly does, not-

New-Haven, July, 1845.

Parker
v.
Griswold.

withstanding he does not apply the water for the purposes for which he has a right to use it, it is equally difficult to perceive the reason why he must so apply it, in order to preserve that right. Whether he will exercise his right to use the water for any purpose for which it can be usefully applied, must depend solely on the dictates of his own judgment ; and nothing could be more unjust or preposterous than to require that he should be at the expense and trouble (perhaps inconveniently and even injuriously to himself,) of erecting a mill or other works upon his land, in order to preserve his right. If, moreover, such a principle should be established, it would seem to follow, that he must use the water to the greatest extent of which it is capable ; and that if he used it to a less extent, he would incur the hazard of losing, by an adverse use, the right to use the remainder. In most of the cases reported, it is true, that mills or other works had been erected on the plaintiff's land ; but this was merely an adventitious circumstance, and the amount of damages only, and not the right of recovery, depended on that fact.

The case of *Wadsworth* v. *Tillotson*, 15 *Conn. R.* 366. recently decided by this court, is strenuously urged, as being opposed to the principles which we have here adopted, and as establishing the doctrine, that in these cases, the question is always whether there has been an unreasonable use of the water by the defendant, and that some actual, perceptible, specific damage must be proved by the plaintiff. A slight examination of that case will show that it is totally unlike the present ; and that the principle adopted or recognized there, and on which that case was decided, has no application here. There, the parties, being adjoining riparian owners, the defendant, who owned above the plaintiff, used the water of the spring which was the source of the stream, for proper and lawful purposes, upon his own land, by means of an aqueduct, in which was placed a penstock, through which the water was continually discharged in order to prevent its stagnation ; and the water thus discharged was not returned to the stream before it reached the land of the plaintiff. The judge at the circuit decided, that this was an unlawful diversion of the water, and therefore, a violation of the rights of the plaintiff, for which he was entitled to recover, although no specific damage was shown. This court held, that the discharge of

the water, under the circumstances of that case, did not constitute a diversion of the stream, within the proper meaning of that term, when used with reference to this subject ; but that the defendant, being in the exercise of his lawful right to use the water on his own land for legitimate purposes, the question which properly arose, and which should have been submitted to the jury, was, whether he had used it in a proper and reasonable manner ; that if the loss of the water was only incidental to the proper and reasonable use of it, it stood on the same ground as a loss merely by increased evaporation occasioned by the dam of an upper proprietor, or any other loss or consumption of water by the very use of it ; but that if it was occasioned by an unreasonable use of the water, and the plaintiff had thereby sustained any actual damage, he was entitled to recover.   A new trial was granted on this ground ; and therefore, it became unnecessary to decide the question whether, if the judge at the circuit had been correct in considering the acts of the defendant as a violation of the legal rights of the plaintiff, the latter could recover, without proving some actual and particular damage ; and this court, therefore, did not consider that question.   In that case, the use of the water by the defendant, and the mode which he had adopted for that purpose, were both lawful, and involved no legal injury to the plaintiff.   It was therefore a proper case for the application of the maxim—*Sic utere tuo ut non alienum lædas.* Here, on the contrary, the act of the defendant, in diverting the stream from the plaintiff's land, was not done in the exercise of any of the lawful rights of the defendant, but was itself an unlawful act.   There, the act of the defendant could only be, at the utmost, a *mis-feasance,* or the doing in an improper manner, what he had a legal right to do : here, it is a *mal-feasance,* or the doing what he had no right to do. Therefore, in this case, the act complained of, however done, was a wrong in itself ; but in that, it would become such, only by the manner in which it was done,—by an abuse of the defendant's right,—and a consequential actual damage to the plaintiff.

The defendant objected, on the trial, to the competency of *Daniel L. Parker,* as a witness for the plaintiff.   His interest, however, was only in the question, but not in the event of the suit.   He could neither gain nor lose, by the legal operation

of the judgment in the cause; nor would the record be evidence either for or against him, in any other action. 3 *Stark. Ev.* 1675. In this respect, the case is clearly distinguishable from *Jebb* v. *Povey*, 2 *Esp. R.* 679.

*New-Haven,*
July, 1845.
_____
Parker
*v.*
Griswold.

It is unnecessary to examine the correctness of the decision of the court below on the question whether it was competent for the jury to consider the damage done to the plaintiff, by reason of the stream being so reduced, by the diversion complained of, as to form a less effectual protection to the plaintiff's land than it had done before, since the claim of the plaintiff only went to enhance the damages; and nominal damages only being given, it is obvious, that the defendant has not been injured, by the charge on this point.

A new trial therefore is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.