## The City of Bridgeport vs. The Bridgeport Hydraulic Company.

Third Judicial District, Bridgeport, April Term, 1908.

Baldwin, C. J., Hamersley, Prentice, Thayer and Roraback, Js.

The Supreme Court of Errors will not retry questions of fact which have been determined upon conflicting testimony. The question of whether a storm was unprecedented was *held*, under the circumstances, to be one of fact.

A water company having a right by charter to maintain a dam is not liable for injury caused by the bursting of the dam through extraordinary, unprecedented floods.

The trial court having found that the dam was not insufficient, the circumstances attending a previous inspection of the dam were immaterial, and the judge may properly refuse to insert in the finding a statement that the engineers making the inspection were not informed as to the history of the dam, or that a certain examination of the dam did not relate to the sufficiency of its dimensions or the capacity of the spillway.

In order to secure the correction of a finding on appeal, appropriate exceptions must be taken.

Even if such exceptions are made they are of no avail if the question presented by the proposed additions is not included in the original statement of the questions which the appellant ·desires to have reviewed.

In the absence of such statements, the trial court, if it believes that the omission was by accident and not for an improper purpose, that the questions presented by the additions proposed have merit, and that the appellee has not been prejudiced by the delay, may make the additions, but it is not bound to so do and its refusal affords no ground for appeal.

The requirements of the statute, that the questions of law which the appellant wishes reviewed must be stated, is highly beneficial and ought to be enforced, not only in its letter but in its spirit.

Argued April 16th—decided August 3d, 1908.

Action to recover damages for injuries to certain streets and bridges of the plaintiff city, through the breaking away of the defendant's dam, which was alleged to be the result of its negligence, brought to and heard in damages by the Superior Court in Fairfield County, *Shumway, J.*; facts

found and judgment rendered for nominal damages only, and appeal by the plaintiff. *No error.*

*James A. Marr* and *Thomas M. Cullinan,* for the appellant (plaintiff).

*Goodwin Stoddard* and *Stiles Judson,* for the appellee (defendant).

THAYER, J.   The complaint alleges, in substance, that the defendant's dam broke and discharged an immense body of water, which had been collected in its reservoirs, upon certain highways and bridges of the plaintiff below the dam, destroying some of them and greatly damaging and injuring others ; that the dam was defective in having insufficient spillway capacity for all conditions against which the defendant was bound to provide, and in other respects not necessary to be mentioned ; that the defendant was negligent in permitting this defective condition to exist, and that it was by reason of the defects in the dam and the defendant's negligence in permitting them to exist, that the dam gave way and the injuries complained of were received.   The case was defaulted, with notice that on the hearing in damages evidence would be offered to disprove these allegations and to prove that the dam gave way by reason of an extraordinary and unexpected freshet.

The defendant, as alleged in the complaint, is chartered by the State for the purpose of supplying water to the inhabitants of the plaintiff city and vicinity, and no question is made as to its right to maintain the dam in question on the Pequonnock River.   The contested questions between the parties were whether the dam was defective, and if so, whether the defendant was negligent in permitting it to be in that condition, and whether the injury was caused by such negligence.   The court found the allegations of the complaint untrue, and that the destruction of the dam was due to an extraordinary and unprecedented flood in the river.   These findings of fact support the judgment for the defendant, and, if correct, dispose of the questions of

law attempted to be raised on the appeal, except those which relate to the admission of evidence. The plaintiff contends that these findings are not correct, and in its appeal asks for their correction. Its claim is that the changes asked for are warranted by the subordinate facts which appear in the finding, but if not, that the evidence which is made part of the plaintiff's exceptions warrants them.

It is claimed that the court improperly found that the storm which carried away the dam was unprecedented. This was a question of fact. The evidence bearing upon the question is not before us. The facts from which the conclusion was drawn are these: In approximately twelve hours on the afternoon and evening of July 29th, 1905, between eleven and twelve inches of rain fell on the lower two thirds of the watershed of the defendant's reservoir. When the storm commenced the water in the reservoir was three feet below the spillway of the dam. At seven o'clock the water was running over the spillway and the waste-gates were then opened by the defendant's engineer. The water continued to rise, and at one o'clock on the morning of July 30th it ran over the earthwork of the dam, shortly after undermined it, and the dam gave way. This fall of rain produced at the dam, at the height of the flood, not less than two hundred cubic feet per second of water per square mile of watershed, the capacity of the spillway being only one hundred and fifty-five cubic feet. The river at a point about a mile above the reservoir, which point substantially all the water flowing into the reservoir passed, was over three and one half feet higher than at any previous known flood, and the width of the river at the same point was expanded to six hundred and sixty-nine feet. In the highest previous known flood it was three hundred and thirty feet. In the flood of 1874, which did not top the dam and which was the highest previous one concerning which there was any evidence before the court, the highest point reached by the water in the reservoir was prior to the opening of the waste-gates, according to the testimony of the plaintiff's

principal witness, and when the gates were opened the water above the dam at once began to recede. It thus appears that when the waste-gates were open the dam had ample discharging capacity for all previous known floods, while in the storm of 1905, with those gates opened as soon as the water reached the spillway, the water continued to increase in height until it rose above the earthwork, which was nearly seven and a half feet above the bottom of the spillway, and destroyed the dam. We think that these facts justify the conclusion that the flood in question was extraordinary, unprecedented, and not reasonably to be expected.

But the plaintiff claims that the evidence, which is made a part of its exceptions, shows that in the flood of 1874 at least, and perhaps in one or two others which occurred since the dam was built in 1853, the water topped or ran over the earthwork of the dam. There was considerable evidence bearing upon the height to which the water rose on those occasions. There was some direct evidence on the part of the plaintiff's witnesses that in the 1874 freshet the water ran over the earthwork of the dam. But there was conflicting evidence, and the principal witness for the plaintiff on this point was attacked by evidence tending to show that he had previously made contradictory statements concerning the occurrence. The case upon this point is therefore clearly within the rule repeatedly stated by us, that this court will not retry questions of fact which have been determined upon conflicting testimony. *Hourigan* v. *Norwich*, 77 Conn. 358, 368, 59 Atl. 487, and cases cited.

If, therefore, the law is, as claimed by the plaintiff, that it was the duty of the defendant to keep its dam safe and secure against all conditions of the stream which could reasonably be expected to occur, the finding of the court shows that the duty was performed. It is well settled that the owner of a dam is not liable for injuries caused by extraordinary, unprecedented floods. These are classed with inevitable accidents, as the result of *vis major* or act of God against which one cannot reasonably be required to provide.

It appears that during the trial two civil engineers, Senior and Hill, were called to testify in behalf of the defendant that, at its procurement, they made an examination of the dam in 1904, and found and reported it safe and suitable. Upon cross-examination it appeared, as claimed by the plaintiff, that the defendant, at the time of their employment, did not give them a history of the freshets which had previously occurred in the river. The plaintiff has excepted to the court's refusal to find this fact. The testimony of these witnesses was offered as bearing upon the question of the defendant's negligence, to show the precautions which it had taken to assure itself of the safety of the dam, and had the court found that the dam was insufficient, but that the defendant was not negligent in respect thereto, the fact requested to be found would be important as showing that the defendant was negligent in regard to the inspection. But the court has found that the dam was not insufficient, and found it not from what these witnesses reported to the defendant, which for that purpose would be inadmissible, but from the testimony of witnesses before it, including experts who had the history of prior freshets in mind as they testified. If the defendant was negligent, therefore, in failing to inform these engineers of the prior freshets in the river, such negligence in no way contributed to the breaking of the dam or the plaintiff's injury, and the fact of such failure is entitled to no place in the finding. The court, for this reason doubtless, properly refused to add the fact to the finding. For similar reasons the plaintiff was not entitled to have the fact that engineer Schofield's examination of the dam did not relate to the sufficiency of its dimensions or capacity of the spillway added to the finding.

The draft-finding, and the statement of the questions of law arising thereon which the plaintiff desired to have reviewed, which were filed with the request for a finding as the statute requires, presented for review only one question of evidence. After the finding had been filed the plaintiff filed a motion for corrections in and additions to the same.

Among the latter were presented several rulings upon questions of evidence which arose during the cross-examination of one Allen. No exceptions based upon a refusal to make such additions were filed. The statute requires the filing of such exceptions to support an appeal to this court for such a correction. *Walsh* v. *Hayes*, 72 Conn. 397, 403, 44 Atl. 725. But such exceptions, if made, would have been of no avail in support of the plaintiff's appeal in this case, for the reason that the questions presented by the proposed additions were not included in the original statement of the questions which the plaintiff desired to have reviewed. *Clark's Application*, 79 Conn. 136, 138, 64 Atl. 12; *Dennison* v. *Waterville Cutlery Co.*, 80 Conn. 596, 69 Atl. 1022. The court, therefore, was not bound to make the additions, although it had the power to do so if it believed that their omission from the original statement was by accident and not for an improper purpose, and considered that the questions presented by the additions proposed had merit and that the defendant had not been prejudiced by the delay. The requirement of the statute is highly beneficial and ought to be enforced not only in its letter but in its spirit. *Clark's Application*, 79 Conn. 136, 139, 64 Atl. 12. The plaintiff could only ask for the additions as a matter of grace and not as a matter of right. The court's refusal to make them affords no ground for an appeal.

The only question of evidence properly raised by the appeal is whether his attorney's privilege protected Mr. Marr, one of the plaintiff's counsel, from disclosing the contents of engineer Bunce's report. He was called by the defendant as a witness, and was asked to compare the language of a claimed copy of that report with the original which had come into his possession as counsel for the plaintiff. This was in effect asking him to produce in evidence the document itself, and was objected to by him upon the ground that it was a privileged communication which he was not bound to disclose. The court overruled the objection. Formerly a party to an action could not be compelled by his opponent to testify, and documents in his

possession were then protected from disclosure. To enable him to obtain the aid of counsel it was necessary to protect such documents in the hands of the counsel; otherwise by the employment of counsel to protect his interest he would lay open to his opponent evidence which was protected in his own hands. That he might be free to employ counsel, it was held that such documents were privileged in the counsel's hands. But the privilege belonged to the client and not to the counsel, and could be waived by the former, and if waived, the latter could be compelled to disclose. *Hunt* v. *Blackburn,* 128 U. S. 464, 470, 9 Sup. Ct. Rep. 125. When the law was changed so that the client could be compelled to produce the document (See *Banks* v. *Connecticut Ry. & Ltg. Co.,* 79 Conn. 116, 118, 64 Atl. 14), the necessity for the rule that the attorney could not be compelled to produce it ceased, and the rule fell with it. *Jones* v. *Reilly,* 174 N. Y. 97, 105, 66 N. E. 649. The court rightly held, therefore, that the report was not privileged in the hands of counsel.

There is no error.

In this opinion the other judges concurred.