JOHN M. BEAUTON *v.* THE CONNECTICUT LIGHT & POWER COMPANY.

JENNIE DRAPEAU *v.* THE CONNECTICUT LIGHT & POWER COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 7—decided December 7, 1938.

*J. Warren Upson,* for the appellants (plaintiffs).

*Walter F. Torrance,* for the appellee (defendant).

AVERY, J. These two cases were tried together before the jury and verdicts rendered in favor of the defendant in both cases, from which the plaintiffs have appealed. The plaintiffs set forth in their complaints and at the trial offered evidence which they claimed proved these facts: The plaintiffs were owners of cottages in a development known as Under the Rock Park situated upon the Housatonic River about a mile below the Stevenson Dam of the defendant. On the morning of March 12, 1936, their cottages were swept away and destroyed, as they claimed, by reason of the negligence of the defendant in the construction and operation of the dam. They claimed that there was a freshet in the river at that time due to heavy rains and melting

snow, and that the defendant by reason of the manner in which it operated the flood gates in the dam and also because of flashboards which it placed upon the top of the concrete structure, caused an unusual amount of water to be suddenly released, whereby the valley below was flooded and the plaintiffs' houses swept away. They claimed also that the defendant was further negligent in allowing cribwork used in the construction to remain in the bed of the river near the foot of the dam; and that this cribwork was washed down the river by the flow of water and contributed to cause the destruction of their cottages. In the complaints these facts were set up at length in two counts, one based on the theory of negligence and the other on nuisance.

The defendant denied that it was negligent or guilty of a nuisance in any respect in either the construction or operation of the dam; and in a special defense set up that the damage to the plaintiffs' houses was wholly caused by an act of God—an unprecedented flood upon the river due to unusually heavy rains and warm weather causing the snow to melt rapidly, whereby an amount of water came into the river much greater than any theretofore known. In a separate special defense the Statute of Limitations was pleaded.

The assignments of error which are pursued by the plaintiffs in their briefs concern a ruling of the court in refusing to permit the plaintiffs to amend their complaints during the course of the trial, and the instructions of the court in regard to the effect of an act of God, in regard to the effect of the Statute of Limitations upon claims for damage to personal property, and in defining the duty of the defendant in the maintenance and operation of the dam.

In the course of the trial it appeared that there were flashboards erected upon the concrete top of the dam

three feet in height and that no certificate approving the erection of such flashboards appeared upon the land records of either of the towns in which the dam was located. The plaintiffs on the second day of the trial offered an amendment which alleged in substance that the defendant was subject to the provisions of Chapter 180 of the General Statutes, and that it altered and added to the Stevenson Dam without obtaining the approval of the state board of civil engineers and without filing certificates of such approval in the offices of the proper town clerks, as required by the statute. The court on the day following permitted the plaintiffs to amend by alleging that the flashboards constituted a nuisance and negligence on the part of the defendant, but denied that part of the amendment which alleged that the flashboards were illegally placed on the dam. The appellants assign error in this ruling.

It appeared that the dam was built in 1919 by the J. A. P. Crisfield Contracting Company, an independent contractor, and shortly after the dam's completion flashboards were installed and have been maintained ever since. Counsel for the defendant stated that to disprove the allegations of the amendment it would have been necessary for the defendant to have produced evidence from its own files or those of the Crisfield Company or from witnesses that the plans, specifications and other data for the flashboards had been submitted to a member of the board of civil engineers and had been approved by him and a certificate issued in accordance with the statute, or that it had been determined by him that such an approval was not necessary; and that the Crisfield Company had ceased to function after completion of the dam in 1919 and its engineer who certified to the maps and plans used in connection therewith was in parts unknown. These statements were not controverted. To have required

the defendant to meet this issue, raised in the course of the trial upon such short notice, would have imposed upon it a burden practically impossible to have been met. In *Clayton* v. *Clayton*, 115 Conn. 683, 686, 163 Atl. 458, we said, " 'An amendment of the pleadings, when the case is on trial, and the evidence partly in, is never a matter of absolute right.' Much must necessarily be left to the sound discretion of the court and its action is reviewable only in the case of abuse." We cannot say that the trial court abused its discretion in refusing to allow the plaintiffs to amend at that stage of the trial.

As the amendment to the complaint was not allowed, it follows that the assignments of error based upon the failure of the court to charge that the construction of the flashboards was negligence as a matter of law are without force. There is no allegation in the complaint to that effect. The appellants cannot predicate reversible error upon the failure of the court to charge the jury upon a matter not in issue. *Swift & Co.* v. *Lundin*, 98 Conn. 78, 80, 118 Atl. 444; *Raymond* v. *Bailey*, 98 Conn. 201, 211, 118 Atl. 915. The court properly left it to the jury to determine as a matter of fact whether the defendant was negligent in erecting the flashboards.

The appellants claim that the court erred in not instructing the jury that an act of God could not constitute a good defense to an allegation of nuisance. The court informed the jury, "Where damages are due directly and exclusively to natural causes, without human intervention, which could not have been prevented by human foresight . . . they are said to have been caused by an act of God." The jury were also charged that if the misconduct of the defendant either in whole or in part was a substantial factor in causing their injuries they would not be denied recovery be-

cause they built where they did; and again that if the injury was caused in part by the act of God and in part by the negligent conduct of the defendant the act of God would not be a defense. Whether an act be legally designated as negligence or nuisance, in order to form the basis of recovery in a civil action the act must be a substantial factor in causing the damage. If the damage is caused directly and exclusively by an act of God, it could not be due to negligence or nuisance. *Pleasure Beach Park Co.* v. *Bridgeport Dredge & Dock Co.,* 116 Conn. 496, 502, 165 Atl. 691; *Donnelly Brick Co., Inc.* v. *New Britain,* 106 Conn. 167, 178, 137 Atl. 745; *Stamford Dock & Realty Corp.* v. *Stamford,* 124 Conn. 341, 345, 200 Atl. 343. The charge on this point was as favorable to the plaintiffs as was permissible under the claims of proof. The contention of the plaintiffs that the insertion of the act of God as a special defense and the charge of the court thereon placed an undue burden upon them cannot be sustained, as the trial court throughout its instructions placed the burden of proof as to the defense of an act of God upon the defendant.

The plaintiffs requested the court to charge that the obstruction of the natural course of a stream is always done at the risk of being answerable in damages to him who sustains loss thereby; and further that when a dam is so constructed that flood gates can be opened to relieve pressure in time of stress and they are opened with the result that the flood water destroys property below, the owner of the dam is liable. The court instructed the jury, "An upper proprietor upon a stream has no right to gather and impound waters and then suddenly let them loose on the land of the lower proprietors. Each riparian owner is limited to the reasonable use of the water with due regard to the rights

and interests of such other owners. It is the common right of all to have the stream preserved in its natural size, flow and purity without material diversion." This instruction complied with the substance of plaintiffs' request and correctly stated the law with respect to the rights of the plaintiffs as lower riparian owners. *Wadsworth* v. *Tillotson*, 15 Conn. 365, 373; *Harvey Realty Co.* v. *Wallingford*, 111 Conn. 352, 359, 150 Atl. 60.

The court further instructed the jury, "While the plaintiffs were entitled to the customary flow of the river and the defendant had no right to accelerate substantially the flow of the water beyond the natural capacity of its banks, yet you will bear in mind that the plaintiff has to prove that such acceleration or increase was caused by the defendant and caused the injuries claimed; and if the flood that caused the damages was created solely by storm and weather conditions and the conduct of the defendant as alleged did not contribute substantially or essentially to cause it, the defendant would not be liable. That is the plaintiffs' claim is that the defendant impounded flood waters and let them escape in excessive flow. The defendant's claim on the evidence is that the water came down into Zoar Lake at this time and was not impounded; that it flowed on over the dam and through their sluice gates in the same quantity as it entered and that they did not accelerate its flow by withholding and then releasing it. If you find this to be the fact, the plaintiffs could not recover," and the court added, "You will determine from the evidence whether the plaintiffs have proven the defendant allowed a large amount of water suddenly to escape in the words of their complaints, and if so whether it was this that caused the plaintiffs' injuries." This

was a correct statement of the law applicable to the claims of the parties in the instant case. *Parker* v. *Griswold,* 17 Conn. 288, 299; *Bridgeport* v. *Bridgeport Hydraulic Co.,* 81 Conn. 84, 87, 70 Atl. 650; *Clapp* v. *Herrick,* 129 Mass. 292, 295; *Wilson* v. *Campbell,* 76 Me. 94, 95; 67 C. J. 702. The defendant in this case was not an insurer; the measure of its duty in the construction and operation of its dam was to use reasonable care.

In the answer, in addition to a general denial, the defendant set up in separate and distinct defenses an act of God and the Statute of Limitations. The verdict was a general one. It does not appear that the plaintiffs requested that the jury be required to state upon which of the defenses its verdict was based. "Where a complaint is properly divided into separate counts, it is sound policy to require that, if a party desires to raise on appeal errors affecting one alone, he shall seek a separate verdict upon each count. So where in an answer separate defenses are properly pleaded, it is sound policy to require that, if a verdict is rendered for the defendant, it shall state upon which of the defenses it is based." *Ziman* v. *Whitley,* 110 Conn. 108, 115, 147 Atl. 370. In the footnote to that case forms of verdict are suggested applicable to such a situation. The plaintiffs did not follow this course or request interrogatories. As the verdict was a general one, the legal presumption is that the jury found all the issues for the defendant; and, as there was no error in the instructions of the court upon the other issues, it is unnecessary to consider whether the instructions in regard to the Statute of Limitations were correct. *Foster* v. *Smith,* 52 Conn. 449, 451; *Aaronson* v. *New Haven,* 94 Conn. 690, 697, 110 Atl. 872; *Callahan* v. *Jursek,* 100 Conn. 490, 493, 124 Atl. 31; *World*

*Fire & Marine Ins. Co.* v. *Alliance Sandblasting Co.*, 105 Conn. 640, 646, 136 Atl. 861.

There is no error.

In this opinion the other judges concurred.