PAUL D. DELAHUNTA ET AL. *v.* CITY OF WATERBURY

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued April 8—decided June 3, 1948

*J. Warren Upson,* with whom was *William K. Lawlor,* for the appellants (plaintiffs).

*Maurice T. Healey,* with whom were *George J. Crocicchia* and, on the brief, *Philip N. Bernstein,* for the appellee (defendant).

BROWN, J. The four plaintiffs joined in this action to recover for the damage each sustained when an automobile driven by the plaintiff Paul, in which the other plaintiffs were passengers, collided at a street intersection in Waterbury with a concrete traffic stanchion, which, it is alleged, constituted a nuisance maintained by the defendant. The jury rendered a verdict for the defendant as against the plaintiff Paul, and a verdict for damages in favor of each of the other plaintiffs. The court set aside the three plaintiffs' verdicts. Judgment was rendered for the defendant city, and all of the plaintiffs have appealed. The plaintiff Paul's appeal attacks the court's charge to the jury concerning contributory negligence, and that of the other plaintiffs its

decision in ordering the verdicts set aside. We consider first the question raised by the latter appeal.

The principal undisputed facts may be thus summarized: On March 22, 1942, the city maintained a stanchion, known as a silent policeman, at a street intersection in Waterbury where Watertown Avenue, a heavily traveled highway running north and south, is intersected at right angles from the west by Robbins Street, which does not cross it. Watertown Avenue, which is practically level and 47 feet wide, is straight for several hundred feet to the north and is paved with concrete laid in longitudinal panels, separated by narrow interstices. The first or most easterly panel is 11 feet wide, the second 12, the third 12, the fourth 8, and the area between that and the westerly curb is about 4 feet at its southerly end and narrows to the north. Robbins Street is 48 feet wide and flares to a somewhat greater width where it enters the intersection. There is a gasoline station on the northwesterly corner served by two driveways from Watertown Avenue. About 650 feet north of the stanchion, on the west side of the avenue, was a sign reading: "Speed limit 25 miles per hour," and some 130 feet south of this another, warning of rotary traffic ahead. There were no directional or other traffic lines painted on the surface of the avenue.

The traffic stanchion was placed and maintained by the city on the third panel from the east on Watertown Avenue, with the east face of its base 5 feet west of the easterly line of the third panel, which was approximately the center line of the paved portion of that highway, and with the center of its base 1 foot north of the middle line extended of Robbins Street. The stanchion was originally installed in October, 1940, and consisted of a concrete base with

a superstructure of metal, surmounted by three blinker lights. All below these lights had been painted white, and on the north side of the base an arrow pointing west and the words "Slow. Go Right" were painted in black. The base was 3 feet 2 inches square at the pavement, 3 feet 8 inches high, and 1 foot 11 inches square at the top. It weighed about 4500 pounds and was fastened to the pavement by steel dowel pins. The blinker lights were 9 feet 6 inches above the pavement. One faced south, one west and one north. Each was equipped with a 60-watt electric bulb and flashed continuously 55 times per minute. The light facing Robbins Street was red and the other two were amber. Just below these lights were four hooded lights which were designed to illuminate the stanchion below and the surrounding pavement for 3 or 4 feet on each side of it. At the time of the accident all of these lights were lighted, it was raining and the wind was blowing. Shortly after midnight the named plaintiff, with the other three plaintiffs as passengers, was driving a sedan automobile southerly on the third panel of Watertown Avenue when, upon arriving in the intersection, it collided head on with the stanchion, resulting in the injuries and damage complained of.

The plaintiffs seek recovery solely upon the basis of the city's liability for nuisance, under the allegation in their complaint that "Said stanchion was so placed and maintained that it constituted a nuisance and a continuing condition, the natural tendency of which, was to create danger and inflict injury upon person or property especially whenever weather conditions were as described." The case was determined upon the issue raised by the denial of this allegation in the defendant's answer. Since it is undisputed that the city intentionally created and

maintained the condition complained of, if the jury properly could find that this was a nuisance it constituted an absolute nuisance and not one arising from negligence. *Beckwith* v. *Stratford,* 129 Conn. 506, 511, 29 A. 2d 775. In this connection it is to be kept in mind, as we there stated, that "intentional" as here used means, "not that a wrong or the existence of a nuisance was intended but that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance." Accordingly, even though the city acted pursuant to the proper and lawful purpose of safeguarding traffic, in utilizing this stanchion as it did, this would not necessarily excuse it from liability, for "towns will not be justified in doing an act lawful in itself in such a manner as to create a nuisance, any more than individuals. And if a nuisance is thus created, whereby another suffers damage, towns like individuals are responsible." *Mootry* v. *Danbury,* 45 Conn. 550, 556; *Bacon* v. *Rocky Hill,* 126 Conn. 402, 407, 11 A. 2d 399. Whether or not the particular condition created "constitutes a nuisance does not depend merely upon the inherent nature of the condition, but involves also a consideration of all relevant facts." *Balaas* v. *Hartford,* 126 Conn. 510, 514, 12 A. 2d 765.

This stanchion under the existing circumstances could not constitute a nuisance unless, first, the condition by its very nature was likely to cause injury, and, second, the use was unreasonable. *Beckwith* v. *Stratford,* supra, 508. A third essential to liability of the city in this action is that the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damage. *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 241, 21 A. 2d 402; *Beauton* v. *Connecticut Light & Power Co.,* 125 Conn. 76, 81, 3 A. 2d 315; *Karnasiewicz* v. *New Britain,* 131 Conn. 691, 695,

42 A. 2d 32. Whether or not the first two essentials exist is ordinarily a question of fact. *Pope* v. *New Haven,* 91 Conn. 79, 88, 99 A. 51; *Ratti* v. *Berry & Sons, Inc.,* 98 Conn. 522, 525, 119 A. 894. The same is true of the third essential. Notwithstanding this and that there was conflicting evidence relating to these issues in the instant case, the defendant primarily contends that upon this record the jury were unwarranted in rendering the plaintiffs' verdicts which they did because the verdicts were based on surmise and conjecture, or the jury were influenced by sympathy, or this is "the rare case where the physical facts resolve the apparent conflict in the evidence by showing that the testimony which created it is either unintentionally or intentionally untrue because in conflict with the undisputable physical facts. *Gianotta* v. *New York, N. H. & H. R. Co.,* 98 Conn. 743, 744, 120 Atl. 560." *Richard* v. *New York, N. H. & H. R. Co.,* 104 Conn. 229, 232, 132 A. 451.

In deciding whether there was error in setting aside the verdicts, the evidence is to be considered in the light not only of the above principles but of the following. A trial court's decision in this connection is ordinarily entitled to great weight; *D. A. Schulte, Inc.* v. *Hewitt Grocery Co.,* 101 Conn. 750, 751, 125 A. 365; *Delmore* v. *Polinsky,* 132 Conn. 28, 29, 42 A. 2d 349; but it is the plaintiff's constitutional right "to have issues of fact, as to the determination of which there is room for a reasonable difference of opinion among fair-minded men, passed upon by the jury and not by the court." *Burns* v. *Metropolitan Distributors,* 130 Conn. 226, 229, 33 A. 2d 131. "It is not for us therefore to say what portions of the evidence should or should not have been believed by the jury in this case, but we are bound rather to

decide whether the verdict was sound upon any reasonable and fair interpretation of the evidence." *Canfield* v. *Sheketoff,* 104 Conn. 28, 30, 132 A. 401. This holds true concerning the conflicting expert opinion testimony which was introduced during the trial as well as with regard to the other evidence. *Chesley* v. *Banks,* 134 Conn. 146, 148, 55 A 2d. 868; *Naveckas* v. *Jack,* 112 Conn. 407, 410, 152 A. 580. Finally, the court's ruling is "to be tested by the evidence most favorable to the plaintiff." *Sanderson* v. *Bob's Coaster Corporation,* 133 Conn. 677, 678, 54 A. 2d 270; *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 524, 131 A. 501.

The evidence is voluminous and the parties have advanced a number of claims concerning it. We confine our discussion to mention of the facts which the jury could reasonably have found upon the evidence in accord with the plaintiffs' essential claims, and to consideration of the sufficiency of these facts to sustain the three requisites of liability as recited and explained above. Certain statutory provisions have a material bearing upon the facts in issue. Section 119e of the 1939 Cumulative Supplement to the General Statutes provides for a state traffic commission and gives it authority to adopt and publish rules and regulations "establishing a uniform system of traffic control signals, devices, signs and markings," consistent with other provisions of the chapter, for use upon public highways; and § 125e provides that no safety measure, traffic control device, sign or marking shall be installed or maintained on any trunk-line or state-aid highway except by consent and written approval of the commission.

In support of the proposition that under the circumstances the stanchion by its very nature was likely to cause injury, the jury could properly have

found these further facts: The stanchion was an obstruction to traffic and by reason of its weight and immobility constituted a constant danger to any vehicle which might come into contact with it. It was natural for one driving southerly on the third panel to continue thereon into the intersection, and cars parked along the west curb, or a bus at a bus stop located 50 feet north of the intersection, would compel this course. Located as it was in the middle of that panel instead of the middle of the road, the stanchion necessitated an unanticipated swing to the right and back to the left to get through the intersection.

The jury could further have found these facts: The traffic authority of Waterbury applied to the state traffic commission for approval of a traffic device at the street intersection in question, describing it as: "Pedestal. Speed Control, red light flashing into Robbins St., amber flashing on Watertown Ave." The application did not have attached to it a scaled plan showing the location, or certain other information, called for upon the blank. The city received what purported to be a certificate of approval. In fact, the application was never submitted to the commission but only to one member, its secretary, and the certificate of approval was issued at his direction. Watertown Avenue at this place was a trunk-line highway. The location and type of the device were determined by the officials of the city. The commission's regulations characterize such a "beacon or signal support" as that used at the location in question as a "serious hazard to traffic" and state that "these should invariably be removed for safety." There were few others like it in the state. The stanchion at all times created a traffic hazard

for vehicles proceeding southerly, by reason of the danger consequent upon the foregoing facts.

At night the stanchion had an even greater natural tendency to create danger and inflict injury. The base was smudged by marks where cars had rubbed against it, rendering it more difficult to distinguish from the pavement. Because of this and of the flashing blinker lights above, it was difficult to discern the pedestal, and particularly so under such weather conditions as prevailed at the time of this accident. The blinker light, located as it was 9 feet 6 inches above the pavement, violated the rule of the state traffic commission prescribing an elevation of 4 feet for such a light. These facts, in connection with the further fact that such a light, when suspended over an intersection, according to both state-wide practice and the express provision of the commission's rules, would be "erected at a height of not less than 15 feet," were likely to create in a driver approaching it from the north the natural illusion that the signal indicated an intersection to be traversed with caution but one which was free of any surface obstruction. Particularly was this true of the plaintiff driver by reason of the weather conditions prevailing and because he had no knowledge of the actual situation. These facts are supported by the exhibits, direct factual testimony and lay, as well as expert, opinion evidence, and amply sustain a finding that the condition was by its very nature likely to cause injury.

The city contends that, even if this is so, the jury could not properly have found that the maintenance of the stanchion was unreasonable, because, according to evidence offered by it, a fixed stanchion of this nature was essential to prevent vehicles cutting the corner and to channelize traffic properly in con-

nection with cars entering or leaving Robbins Street. The record, however, contains ample evidence justifying the contrary conclusion. In addition to that supporting such of the above facts as are also pertinent in this connection, particularly those relating to the prevailing practice and the state traffic commission's regulations, it warranted the finding of these further facts: This stanchion was an unnecessary obstruction. The city placed and maintained it to impress on local motorists frequently using the intersection that a car colliding with it would be damaged, and so to induce caution through fear of such damage. It was, however, a menace to drivers who had no knowledge that it was there and so were unaware of the danger therefrom. It constituted a dangerous hazard not reasonably necessary for handling the city's traffic problem. Even if a blinker light was necessary, the use of the pedestal to support it was not only unnecessary but created a distinct hazard. If the use of some structure in the highway as a turning center was required, light stanchions which were not immovable should have been used. The entire installation was unusual and one not to be anticipated by a motorist unacquainted with the situation. These facts suffice to show that the city acted unreasonably in maintaining it.

From what we have said, it is clear that the jury could properly have found that this stanchion under the circumstances was a substantial factor in producing the plaintiffs' damage, unless, as the city claims, they could only find that fault of the plaintiff Paul in driving as he did was the sole proximate cause. This claim is predicated on the fact that, though the evidence establishes that the blinker light must have been visible to him from several hundred feet away, he testified that he did not see it until

just before the impact. The jury could have found, however, that, even if he was negligent in not seeing the beacon, its position in the intersection was at least a contributory cause. The verdicts in favor of the three plaintiff passengers were warranted upon the evidence, and the court erred in granting the motion to set them aside.

Whether the plaintiff driver can prevail upon his appeal depends upon whether the court was justified in charging that contributory negligence would be a defense. Since the jury could find, as their verdicts for the other plaintiffs indicate they did, that this was an absolute nuisance, contributory negligence did not constitute a defense. *Beckwith* v. *Stratford,* 129 Conn. 506, 511, 29 A. 2d 775. There was error therefore on the plaintiff Paul's appeal.

There is error upon the appeal of each of the plaintiffs and the judgment in favor of the defendant is set aside; as to the plaintiff Paul D. DeLahunta a new trial is ordered; as to the other plaintiffs the case is remanded with direction to enter judgment for each upon the verdict.

In this opinion the other judges concurred.