104 So.2d 3 (1958)
H.H. DEANE, Appellant,
v.
Miss Myrtle JOHNSTON, Appellee.
Supreme Court of Florida.
June 13, 1958.
Rehearing Denied July 16, 1958.
*4 Roland W. Granat, Miami Beach, and Truett & Watkins, Miami, for appellant.
Nichols, Gaither, Green, Frates & Beckham, Miami, for appellee.
HOBSON, Justice.
Appellee, Miss Myrtle Johnston, sued for injuries sustained when she fell over appellant's weighing machine, which was located on the sidewalk at the intersection of Southeast First Street and Third Avenue in Miami. The case was tried before a jury, and a verdict was returned for the plaintiff in the amount of $40.000. Appeal is prosecuted from final judgment entered consequent upon this verdict.
There is little dispute about the facts of the case as developed at the trial, which *5 may be stated as follows: On the date of the accident, appellee, who was employed in downtown Miami, left her office around 4 o'clock in the afternoon. She left earlier than usual because the area had been alerted for a possible hurricane. She proceeded to the intersection and waited for a bus there, as had been her daily practice for approximately eighteen months preceding the accident. On the sidewalk near the corner was a bus sign on a metal standard embedded in the concrete. Next to the standard was a weighing machine owned by appellant. It was an ordinary weighing machine or scale of the type often seen at public places, consisting of an upright portion and a base upon which a person might stand to have his weight recorded. The base of the weighing machine projected over two feet beyond the standard supporting the bus sign and occupied a part of the sidewalk. The scale had been in this location for some seven or eight years.
Appellee knew the scale was at the location where it had always been. After she had waited for the bus some ten minutes, standing immediately south of the bus sign standard and the weighing machine, she heard her employer call her name and saw that he was heading west on Southeast First Street in his automobile. He had stopped for a stop light. She turned and started toward him, but tripped over the scale and fell. When she fell, she was watching the traffic light.
Appellee had previously undergone a "reconstruction" of her left leg necessitated by a malignant tumor of the femur. The reconstruction consisted of two surgical operations in which portions of the bone affected by the malignance were removed and new bone grafted in to strengthen the leg. This difficulty began in 1946 and continued until the latter part of 1948. Appellee wore a brace until the spring of 1950. She was not wearing a brace or using crutches at the time of the accident, but she testified that she had to exercise caution in her movements, and "had to be very careful." There was a certain amount of weakness in the ligaments and bone structure of her thigh, and she always moved slowly, as the doctor had advised her to do.
After she tripped over the scale, she was taken home by her employer and examined by the same doctor who had previously treated her left leg. Bed rest was prescribed. The left leg was painful and discolored, but four weeks after the accident appellee was able to return to work on crutches. In January of 1954 her left leg broke, and in June of the same year (or over a year and a half after the accident) the leg was required to be amputated.
Appellant testified that he owned the scale in question and that he had an occupational license to engage in the business of operating weighing scales in the city of Miami. He did not, however, have a permit from the police or fire department to place the scales upon the sidewalk. A city ordinance, introduced in evidence by the plaintiff, provides in part:
"No person shall obstruct or cause to be obstructed any street in this city, or impede the general movement of traffic without first having obtained a permit from both the police and fire department."
It appears from the definition section of the ordinance that the sidewalk is considered part of the street.
Appellee asserts that each time the police carried appellant's scales away appellant would get them from the pound and put them back on the sidewalk, but the record is not so clear. Appellant's testimony was vague on this point when read in its entirety, but he did testify unequivocally that it had never happened in the location in question. Appellant was seventy years of age at the time of trial and testified that he was in poor health and that his memory was impaired. There was no evidence by any *6 other witness that appellant's scales were ever carried away by the police.
Appellant first contends that appellee was guilty of such contributory negligence as to bar recovery as a matter of law. Appellee parries this contention by asserting, under cross-assignment of error, that appellant created a public nuisance and that in such case contributory negligence is not a defense.
The last specific word by this court on the defense of contributory negligence in a nuisance case was delivered in 1850 in City of Tallahassee v. Fortune, 3 Fla. 19, wherein we held that a plaintiff claiming damages as the result of a nuisance must show that he acted with common and ordinary care. In so holding, this court relied upon the celebrated case of Butterfield v. Forrester, 11 East 60, 103 Eng.Rep. 926, 19 Eng.Rul.Cas. 189, wherein the plaintiff had been held barred from recovery by his own negligence although the defendant had been responsible for a nuisance (a pole across a public highway). But appellee in the present case refers us to McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 57 A.L.R. 1, and certain related cases since decided (e.g., Delaney v. Philhern Realty Holding Corp., 280 N.Y. 461, 21 N.E.2d 507; Beckwith v. Town of Stratford, 129 Conn. 506, 29 A.2d 775; and DeLahunta v. City of Waterbury, 134 Conn. 630, 59 A.2d 800, 7 A.L.R.2d 218).
In the McFarlane case, in an opinion by Judge Cardozo, it was held that where a nuisance grows out of negligence, the plea of contributory negligence is available to the defendant and may bar recovery. Judge Cardozo suggested, however, by way of dictum, that a different rule might apply where the nuisance was "absolute".
What Professor Seavey has referred to as "the first misinterpretation of Judge Cardozo's words" [Seavey, Nuisance: Contributory Negligence and Other Mysteries, 65 Harvard L.R. 984, 991] was made in Delaney v. Philhern Realty Holding Corp., supra, 280 N.Y. 461, 21 N.E.2d 507, where the plaintiff had tripped over a board covering a pipe laid across the sidewalk. It was held that if the permit issued to the contractor did not comprehend the laying of the pipe in such a manner the nuisance was absolute and contributory negligence should not be considered, but if the contractor was authorized to lay the pipe and board across the sidewalk and did so in a negligent manner, the plaintiff's negligence was a factor for consideration. A judgment for the plaintiff was reversed and a new trial granted because the trial judge had not properly distinguished between the two types of nuisance. Judge Crane, concurring only in the result, stated in part:
"There has been so much written and said about the defense of negligence in an action of nuisance that the subject has become a mystery, smothered in verbiage.
"The law in my judgment is, and should be, that except in rare cases of absolute nuisance of extreme danger, the negligence of the plaintiff contributing to the injury may be a bar to recovery. * * * To try to distinguish between the different kinds of nuisance or the degree of nuisance, and the cases where the negligence of the plaintiff would or would not bar recovery, has led the courts into a maze." 21 N.E.2d 507, 510.
It appears, from a review of the cases, that Judge Crane's words accurately described the situation.
In Connecticut the line of cases attempting to distinguish between an absolute nuisance and one growing out of negligence has culminated in DeLahunta v. City of Waterbury, supra, 134 Conn. 630, 59 A.2d 800, 7 A.L.R.2d 218, wherein a city put a traffic stanchion in a place found to be dangerous. It was held that the plaintiff would not be barred by contributory negligence *7 if the jury should find that the stanchion created an absolute nuisance. The court defined this as an intentionally created condition, stating that for an absolute nuisance it was necessary to find only "that the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance" (59 A.2d 802-803). This rule would in effect make the creator of a condition found, after the fact, to have been a nuisance an insurer of the safety of all persons who might conceivably be injured by it, regardless of their own conduct or whether or not the condition might be described as inherently or extremely dangerous. The rule, however, has been held to prevail or stated by way of dictum by other courts. See Hammond v. County of Monmouth, 117 N.J.L. 11, 186 A. 452; Thompson v. Petrozzello, 5 N.J. Misc. 645, 137 A. 835; Terrell v. Alabama Water Service Co., 245 Ala. 68, 15 So.2d 727; Gaines v. Village of Wyoming, 147 Ohio St. 491, 72 N.E.2d 369; Taylor v. City of Cincinnati, 143 Ohio St. 426, 55 N.E.2d 724, 155 A.L.R. 44; Llewellyn v. City of Knoxville, 33 Tenn. App. 632, 232 S.W.2d 568; Johnson v. City of Alcoa, 24 Tenn. App. 422, 145 S.W.2d 796; and Kincaid v. Chicago, R.I. & G. Ry. Co., Tex.Civ.App., 119 S.W.2d 1084.
In this illuminating article, Nuisance: Contributory Negligence and Other Mysteries, 65 Harv.L.R. 984, Professor Seavey points out that the distinction between the intentional creation of a defect in the public way and the failure to keep it in repair has only recently come into prominence. He cites numerous cases wherein contributory negligence has been a defense although the defendant intentionally created a dangerous situation on the road. He states:
"In most of these cases the condition is not described as a nuisance, but there is no reason to change the rules as to contributory negligence because the defendant's conduct is given a bad name. Even if contributory negligence is no longer a favored defense, it should not be denied in sporadic cases by the use of an artificial technique." 65 Harv. L.Rev. 984, 993-4.
Cases cited by Professor Seavey include City of Jacksonville v. Bell, 93 Fla. 936, 112 So. 885, 53 A.L.R. 163, wherein the plaintiff was injured when she drove her automobile against an unlighted safety island in the street. Although the word "nuisance" does not appear to have been used, we held the plaintiff barred by contributory negligence and a judgment in her favor was reversed, largely because her testimony had shown that she was familiar with the street and had full knowledge of the obstruction. We relied in part upon Key West Electric Co. v. Albury, 91 Fla. 695, 109 So. 223, wherein, in a syllabus by the court, we had stated:
"Where one seeks to recover damages for personal injuries, sustained by falling over materials placed on a public street by the defendant while working at the place where the injury occurred, the plaintiff cannot recover if she knew, or could have known by the exercise of ordinary caution, of the existence of the obstruction, and could have avoided the injury."
In the City of Jacksonville and Key West Electric Co. cases it did not appear that the acts complained of were independent violations of law. The word "nuisance" was not used or suggested, and the cases were decided primarily upon common tort principles. City of Tallahassee v. Fortune, supra, 3 Fla. 19, was not cited. Although this may be explained by calling the Tallahassee case a "nuisance" case and stating that the others were not, it appears that we should now attempt to clarify the subject in such a way as to avoid the difficulty encountered in Connecticut, and in other states following the same principles.
It is commonly conceded that contributory negligence will not bar an action *8 for an intentional tort. 2 Restatement of Torts, § 481. But the character of the intent required for an intentional tort is different from the concept of intent which was relied upon in the DeLahunta case, supra, 134 Conn. 630, 59 A.2d 800, 7 A.L.R. 2d 218. Intent in the law of torts means that the actor acts for the purpose of causing an invasion of another's interest or knows that such an invasion is resulting, or is substantially certain to result, from his conduct. It is not enough that the act itself is intentionally done. See Florida Southern Ry. Co. v. Hirst, 30 Fla. 1, 37, 11 So. 506, 16 L.R.A. 631; Wirt v. Fraser, 158 Fla. 777, 30 So.2d 174; Louisville & Southern Indiana Traction Co. v. Jennings, 73 Ind. App. 69, 123 N.E. 835; Pickett v. Waldorf System, 241 Mass. 569, 136 N.E. 64, 23 A.L.R. 1014; 1 Restatement of Torts § 13d; and Prosser on Torts, 2d Ed., pp. 29, 30. There is a great difference between this concept of intent and that espoused by the Connecticut courts in connection with a nuisance. See Nuisance or Negligence: A Study in the Tyranny of Labels, 24 Ind. L.J. 402.
A case where a genuinely intentional tort was under consideration in Hanson v. Hall, 202 Minn. 381, 279 N.W. 227. In that case defendants were members of a labor union who blocked a highway for the purpose of stopping and searching trucks which might be carrying goods to a factory where a strike was in progress. The plaintiff was injured as a direct result of this activity on the part of defendants. It was admitted by defendants that they intended to invade plaintiff's right to reasonable use of the highway for purposes of travel. In so doing they violated a Minnesota statute and created a nuisance. It was held that the trial court had properly refused to allow the defense of contributory negligence and submit it to the jury. The appellate court should have reached the same result even if the nuisance concept had been completely eliminated from the case, because the intent underlying the tort was of the character which has been traditionally accepted in the law of torts. We see no reason for departing from this concept of intent merely because the tort sued upon might be susceptible of the use of the word "nuisance".
To be contrasted with Hanson v. Hall on the facts is Curtis v. Kastner, 1934, 220 Cal. 185, 30 P.2d 26, wherein the plaintiff was injured when she struck her head against a rafter of defendant's garage which projected over a public thoroughfare in violation of statute. When she struck her head, however, the plaintiff was running over the public way and watching a puppy running along with her. The court held that, while the projection of the rafters was an "absolute" nuisance, the judgment for the defendant should be affirmed, since the plaintiff was barred by her own negligence. The offending rafters were not suffered to remain over the public way by the defendant for the purpose of obstructing passage and the tort could not be classified as "intentional", as could the placing of the obstruction in the Hanson case. The court in the Kastner case reviewed the McFarlane case, supra, and cases collected in a note at 57 A.L.R. 7, stating in part:
"From our examination of the cases therein cited and others, we are unable to find that there exists, either at common law or in modern jurisprudence, a well-defined rule that one who sustains injury from a street obstruction or excavation which constitutes a nuisance may recover notwithstanding his failure to exercise due care for his own safety. Where the nuisance has its origin in negligence, as where a street curb is constructed and maintained by a city with a dangerous projection, or where a pile of building materials or an excavation created under license is maintained in a negligent and improper manner, McFarlane v. City of Niagara Falls, supra, the leading case on the *9 subject, expressly holds that one who sustains injury by reason of his own failure to exercise due care cannot recover. We are of the view that the same rule should prevail where the nuisance is absolute and exists without regard to negligent acts or omissions of the defendant." 30 P.2d 26, 29-30.
The imposition of absolute liability for an "absolute nuisance" has gained some acceptance in the years since the Kastner case was decided, but we think it is too inflexible a rule and one which might result in injustice in many cases. Allowing the defense of contributory negligence in cases like the one before us, as we did in the City of Jacksonville and Key West Electric Co. cases, supra, whether or not the plaintiff's theory is grounded in "nuisance", will constitute, we believe, a better solution to the problem, in that it permits all of the factual circumstances to be considered and eliminates formal distinctions of law having no necessary relationship to the proper disposition of the case on the merits. We therefore hold that it was proper for the trial judge to allow the defense of contributory negligence herein, because there was no intentional tort committed by the appellant. True, appellant intended his scale to be located where it was, but not for the purpose of obstructing the passage of persons along the sidewalk. The case is thus closer to the Curtis v. Kastner situation than to Hanson v. Hall.
It should also be observed that contributory negligence commonly does not bar recovery for harm caused by defendant's reckless disregard for the plaintiff's safety, unless the plaintiff is similarly reckless. See Florida Southern Ry. Co. v. Hirst, supra, 11 So. 506, and 2 Restatement of Torts, § 482. This reckless or wanton disregard may result in the elimination of contributory negligence as an issue in the case, but it is not classified as an intentional wrong. Prosser on Torts, 2d Ed., page 30. Obviously, in the present case it could not be considered that appellant's conduct was reckless or wanton, and contributory negligence cannot be eliminated upon this ground.
Since contributory negligence was a defense to this action, the next inquiry is whether it barred plaintiff's recovery as a matter of law. We think that it did not.
This court is committed to the proposition that contributory negligence is ordinarily a question of fact for the jury. It is true that by her own admissions appellee was familiar with the scale and with the locus of the accident. She asserts, however, that the case was one for jury consideration because of the "distraction rule" whereunder, if her attention were diverted from the known danger by a sufficient cause, the question of contributory negligence is for the jury. With this contention we are inclined to agree. At the time appellee was distracted by her employer's call to her she, according to her testimony, immediately looked both at the traffic and the traffic light, which we consider to have been her duty in exercising ordinary care and caution for her own safety before attempting to cross the street.
Upon a consideration of all the circumstances surrounding this unfortunate accident, we are of the view the jury had the right to decide, as it obviously did, that the conduct of appellee at the time of the accident did not fall short of ordinary care. Wilson & Toomer Fertilizer Co. v. Lee, 90 Fla. 632, 106 So. 462, 466. The question of contributory negligence was properly submitted to the jury for its determination. Consequently, our judgment is one of affirmance.
Affirmed.
TERRELL, C.J., and THOMAS, DREW and O'CONNELL, JJ., concur.