2004-NMCA-114

98 P.3d 1044

Bennie GARCIA, Plaintiff–Appellant,

v.

Officer J. GORDON, Valencia County Sheriff's Department and Valencia County, Defendants–Appellees.

No. 23,933.

Court of Appeals of New Mexico.

July 22, 2004.

Michael R. Griego, Pedro G. Rael, Rael and Sanchez, Los Lunas, NM, for Appellant.

Lisa P. Ford, Wagner, McBride, Ford & Associates, P.A., Albuquerque, NM, for Appellees.

## OPINION

VIGIL, Judge.

{1} The jury found that Defendant falsely arrested and falsely imprisoned Plaintiff, resulting in $55,000 in compensatory damages. Over Plaintiff's objection, the jury was allowed to determine whether Plaintiff was comparatively negligent, and the jury found that Plaintiff was 25% negligent. Plaintiff was awarded a judgment of $41,250 in compensatory damages, plus costs, after the reduction of 25% from the gross jury verdict of $55,000. Plaintiff assumes the evidence is sufficient to support the jury's finding and he does not challenge the jury's factual finding

of 25% comparative negligence. However, he appeals, arguing that false arrest and false imprisonment are intentional torts, and comparative negligence is not available as a defense to reduce damages caused in whole or in part by an intentional tort. We affirm on the basis that the jury did not find Defendant acted intentionally in this case.

## FACTS

{2} Defendant, a Deputy Sheriff with the Valencia County Sheriff's Department, was in the process of issuing Plaintiff's girlfriend a traffic citation. Her car was parked on the side of the road, with Defendant's vehicle parked behind it. Plaintiff drove up to the two vehicles, parked his truck in front of his girlfriend's car, got out of his truck, and started approaching his girlfriend's car. Defendant was in his vehicle writing the citation, and not knowing who Plaintiff was or his intentions, he repeatedly instructed Plaintiff to return to his truck over the loudspeaker on his police vehicle. Plaintiff did not comply and continued to approach his girlfriend's car. Plaintiff's girlfriend got out of her car and told him to return to his truck by using arm motions. Defendant saw this and realized that Plaintiff was either deaf or had a hearing problem. He then got out of his police car, approached Plaintiff, and gestured in a pointing motion from Plaintiff's body to his truck several times to instruct Plaintiff to return to his truck. Plaintiff still refused to comply, and he continued to demand that Defendant tell him why he had stopped his girlfriend. Because Plaintiff is deaf, he spoke in a loud and somewhat aggressive manner, while also using hand gestures. At one point while standing within several feet of Defendant, Plaintiff made a hand gesture Defendant found to be threatening. Defendant arrested Plaintiff for resisting, evading, or obstructing an officer.

{3} Plaintiff sued Defendant. The Valencia County Sheriff's Department and Valencia County were named defendants on the basis of respondeat superior. Claims of malicious prosecution, false arrest, false imprisonment, and battery were submitted to the jury. The jury found that Defendant did not maliciously prosecute Plaintiff, and that while Defendant committed a battery, it did not proximately cause any damages to Plaintiff. Defendant was found to have committed a false arrest and false imprisonment of Plaintiff, proximately causing $55,000 in damages. The jury found Defendant 75% negligent and Plaintiff 25% negligent.

{4} The jury was instructed in pertinent part that to establish his claim of false arrest and false imprisonment Plaintiff had the burden of proving, "[Defendant] arrested and confined Plaintiff without probable cause," and that "[f]or a law enforcement officer to make a 'lawful arrest' he must have 'probable cause' that a crime has been committed and that the person to be arrested committed it. 'Probable Cause' is a reasonable ground for belief that a crime has been committed." The jury was told in pertinent part that Defendant claimed that, "Plaintiff was comparatively negligent and that such comparative negligence was a proximate cause of Plaintiff's alleged damages." The jury was also instructed that to establish his claim of comparative negligence, "Defendant must show that Plaintiff did not act with ordinary care, was negligent in failing to return to his vehicle when told to do so, and that such was a proximate, cause of Plaintiff's arrest and subsequent damages." The jury found that Plaintiff was comparatively at fault in failing to return to his vehicle when told to do so, and that his comparative fault was a proximate cause of his injuries and damages.

## DISCUSSION

{5} Plaintiff states that the issue presented in this case is whether a jury can properly apportion fault between a defendant who commits an intentional tort and a plaintiff who is negligent. We are therefore asked to decide whether the trial court fairly instructed the jury on comparative fault, a question of law we review de novo. *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001–NMCA–045, ¶ 11, 130 N.M. 532, 27 P.3d 1019. Plaintiff argues that "[c]omparative negligence is not available as a defense to reduce damages caused in whole or in part" by "false arrest [or] false imprisonment." Plaintiff's argument relates to damages. Since the jury found against Plaintiff on his malicious prosecution and battery claims, we do not address his argument as it relates to these claims. *See Britton v. Boulden*, 87 N.M. 474, 476, 535 P.2d 1325, 1327 (1975)

(stating where liability is decided in favor of defendant, failure to give a correct instruction on damages is not reversible error).

{6} No New Mexico cases directly address when a jury has properly apportioned fault between a defendant who commits an intentional tort and a plaintiff who is negligent. Courts which have addressed this issue have arrived at divergent conclusions. *Compare Mazzilli v. Doud*, 485 So.2d 477, 480 (Fla. Dist.Ct.App.1986) (holding that comparative negligence cannot be used as a defense to an intentional tort where a defendant indisputably intended to shoot plaintiffs thereby committing assault and battery) *with Blazovic v. Andrich*, 124 N.J. 90, 590 A.2d 222, 231 (1991) (holding that responsibility for a plaintiff's claimed injuries is to be apportioned according to each party's relative degree of fault, including the fault attributable to an intentional tort, because intentional wrongdoing is different in degree, not different in kind, from negligent conduct). The cases addressing this issue are collected and discussed in Allan L. Schwartz, Annotation, *Applicability of Comparative Negligence Principles to Intentional Torts*, 18 A.L.R.5th 525 (1994).

> The clearly prevailing view is that comparative negligence principles are not applicable to intentional torts (§ 3[a] ). The rationale for this view rests on the general assumption that comparative negligence evolved to provide compensation to tort victims, who were barred by the harsh doctrine of contributory negligence, and should not be used to diminish recovery where the common law had previously treated an intentional tort victim's contributory fault as irrelevant to damage recovery where an intentional tort was inflicted.

*Id.* § 2[a], at 533. New Mexico has statutorily adopted the majority view as articulated in Section 41–3A–1(C)(1) which states that joint and several liability "shall apply to any person or person who acted with the intention of inflicting injury or damage." The reasoning justified in the majority view is the concept of what constitutes an "intentional tort." For example, *Deane v. Johnston*, 104 So.2d 3, 7–8 (Fla.1958) states that a plaintiff's contributory negligence will not bar the action where the character of a defendant's intent is "intentional," in the following sense:

> Intent in the law of torts means that the actor acts for the purpose of causing an invasion of another's interest or knows that such an invasion is resulting, or is substantially certain to result, from his conduct. It is not enough that the act itself is intentionally done.

*Id.* at 8. *Mazzilli* incorporates this concept of intent in describing an intentional tort for which comparative negligence is not a defense. 485 So.2d at 480. The reasoning for not comparing the fault attributable to the negligence of a plaintiff with the fault attributable to the commission of such an "intentional tort" is succinctly stated in *Florenzano v. Olson*, 387 N.W.2d 168, 176, n. 7 (Minn. 1986) as follows:

> It is the rule of law in virtually all states that fault should not be apportioned between an intentional tortfeasor and a merely negligent victim. The reasons underlying this rule are persuasive. Intentional torts are punished not because the actor failed to use reasonable care, but because the actor intended the act. The difference between the victim's actions and the defendant's action is not one of degree, but of kind, and they are therefore not comparable.

(citations omitted). *See also* Schwartz, *supra*, note 3, at 532 (stating "an 'intentional tort' requires more than an intentional act, in that an 'intentional tort' by its very nature intends to harm"); *Gibson v. Brewer*, 952 S.W.2d 239, 248 (Mo.1997) ("Intent denotes 'that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' " (quoting Restatement (Second) of Torts, § 8A (1965))).

{7} Plaintiff's argument requires us to assume that false arrest and false imprisonment are "intentional torts" in the foregoing sense. However, the jury was not required to determine that Defendant acted "intentionally" under its instructions. The jury was instructed that it had to find that Defendant arrested and confined Plaintiff without "probable cause," and it was further instructed that "probable cause" is "a reasonable ground for belief that a crime has been committed." The jury was therefore only re-

quired to find that Defendant's belief that Plaintiff was resisting, evading, or obstructing an officer was "unreasonable" to find him liable for false arrest and false imprisonment. It did not have to find "intentional" conduct. In contrast, the instructions on battery required a finding that Defendant "intentionally touched or applied force to [P]laintiff's body without justification" when he "forcefully grabbed Plaintiff's face," when he used "excessive force to place Plaintiff's hands behind Plaintiff's back," and when he used "excessive force in squeezing the handcuffs onto Plaintiff's wrists."

{8} We hold that it was proper for the jury to consider whether Plaintiff was comparatively at fault in this case. In *Scott v. Rizzo*, 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981), our Supreme Court adopted the doctrine of "pure comparative negligence." "Pure comparative negligence denies recovery for one's own fault; it permits recovery to the extent of another's fault; and it holds all parties fully responsible for their own respective acts to the degree that those acts have caused harm." *Id.* In *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 159, 646 P.2d 579, 586 (Ct.App.1982), joint and several liability between negligent tortfeasors was abolished, and we reiterated the foregoing statement from *Rizzo.* We added that under pure comparative negligence, "[t]he jury must ascertain the percentage of negligence of all participants to an occurrence." *Id.* at 159, 646 P.2d at 586 (internal quotation marks and citation omitted).

{9} The doctrine of pure comparative negligence adopted in New Mexico simply recognizes that the fault of two or more parties may combine to cause an injury. It denies recovery to a plaintiff to the extent his fault contributed to his own injury. The instructions in this case defining the elements of false arrest and false imprisonment were not objected to and they are the law of the case. *See Couch v. Astec Indus., Inc.,* 2002–NMCA–084, ¶ 40, 132 N.M. 631, 53 P.3d 398 (stating that "[j]ury instructions not objected to become the law of the case"). Under the instructions, Defendant's belief that Plaintiff was resisting, evading, or obstructing an officer was determined by the jury to be "unreasonable." Such a finding is more closely related to negligence than an inten-

tional tort. *See White River Estates v. Hiltbruner,* 134 Wash.2d 761, 953 P.2d 796, 799 (Wa.1998) ("When a person acts 'unreasonably' in light of the circumstances such action is similar to negligence, not an intentional tort."). *Sandifer Motors, Inc. v. City of Roeland Park,* 6 Kan.App.2d 308, 628 P.2d 239, 248 (1981) (holding it was proper for the jury to allocate responsibility for landowner's damages as between city and landowner where evidence only showed that the city's conduct created a condition posing an undue risk of harm and not that it had intended to damage the plaintiff). *See also Voyles v. Sandia Mortgage Corp.,* 311 Ill.App.3d 649, 244 Ill.Dec. 192, 724 N.E.2d 1276, 1282 (2000) (stating "intentional conduct is purposeful and directed toward a specific end, while negligent conduct is careless or accidental"), *rev'd on other grounds by* 196 Ill.2d 288, 256 Ill.Dec. 289, 751 N.E.2d 1126 (2001); *Stott v. Wayne County,* 224 Mich.App. 422, 569 N.W.2d 633, 636 (1997) (stating that generally where act complained of is one of omission rather than commission, it is not an intentional tort).

{10} Plaintiff and Defendant both argue that *Reichert v. Atler,* 117 N.M. 623, 875 P.2d 379 (1994) supports their respective position. *Reichert* is not directly on point. *Reichert* does not involve the comparison of a defendant's intentional tort with a plaintiff's negligent act. It held that where the owner or operator of a business is negligent in failing to protect patrons from foreseeable harm, its fault can be compared to the actions of the perpetrator of that harm, even though the perpetrator acts intentionally. *Id.* at 627, 875 P.2d at 383. *See also Barth v. Coleman,* 118 N.M. 1, 4, 878 P.2d 319, 322 (1994) (holding negligence of business owner and its employee in failing to protect patron from injury caused by intentional tortfeasor to be compared with fault of patron who was attacked and patron who attacked her to reduce liability of owner and employee); *Medina v. Graham's Cowboys, Inc.,* 113 N.M. 471, 474–75, 827 P.2d 859, 862–63 (Ct. App.1992) (holding employer who is liable for negligently hiring an intentional tortfeasor vicariously liable for the fault attributed to the tortfeasor employee). However, we do find the following statement from *Reichert*

instructive in deciding this case: "In New Mexico comparative-fault principles apply unless such application would be inconsistent with public policy." *Reichert,* 117 N.M. at 625, 875 P.2d at 381. We find the applicable New Mexico public policy expressed in Section 41–3A–1. This expression of public policy is consistent with our prior description of what constitutes an "intentional tort." Since the jury only found that Defendant's belief that Plaintiff was resisting, evading, or obstructing an officer was "unreasonable" and it did not find that Defendant acted with the intention of inflicting injury or damage, application of comparative-fault principles in this case is not inconsistent with public policy.

## CONCLUSION

{11} The order of the district court is affirmed.

{12} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and IRA ROBINSON, Judge.