# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:  March 14, 2016**

**NO. S-1-SC-35027**

**HEATHER SPURLOCK; SOPHIA CARRASCO; and NINA CARRERA,**

      Plaintiffs-Appellants/
      Cross-Appellees,

v.

**ANTHONY TOWNES, in his individual capacity,**

      Defendant-Appellee,

and

**BARBARA WAGNER, in her individual capacity; and CORRECTIONS CORPORATION OF AMERICA,**

      Defendants-Appellees/
      Cross-Appellants.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**
**Neil M. Gorsuch and Jerome A. Holmes, Circuit Judges**

Paul Kennedy & Associates, P.C.
Paul John Kennedy
Arne Robert Leonard
Albuquerque, NM

for Plaintiffs-Appellants/Cross-Appellees


Kennedy, Moulton & Wells, P.C.
Deborah Denise Crow Wells
Albuquerque, NM

Struck Wieneke & Love, P.L.C.
Nicholas D. Acedo
Christina Retts
Chandler, AZ

for Defendants-Appellees/Cross-Appellants

**OPINION**

**DANIELS, Justice.**

{1}      The United States Court of Appeals for the Tenth Circuit has certified to us the question of the civil liability under New Mexico law of a private prison when an on-duty corrections officer sexually assaults inmates in the facility. *Spurlock v. Townes*, 594 F. App'x 463, 470-71 (10th Cir. 2014). We hold that the private prison is vicariously liable for damages caused by the intentional torts of its employee when those torts were facilitated by the authority provided to the employee by the prison. The liability of the prison may not be reduced by any fault attributed to the victims of the sexual assaults.

**I.      BACKGROUND**

{2}      Plaintiffs Heather Spurlock, Sophia Carrasco, and Nina Carrera are former inmates of the Camino Nuevo Correctional Center, a prison housing female offenders, directed by Third-Party Defendant Warden Barbara Wagner and privately operated by Third-Party Defendant Corrections Corporation of America (CCA). While incarcerated, Plaintiffs were sexually assaulted by Defendant Anthony Townes, a corrections officer employed by CCA.

{3}      Townes approached Plaintiffs while they were on work detail or removed them from their cells in the middle of the night and then ordered them to other locations in

the prison where he sexually assaulted them. Townes asked officers staffing the "master control" area where the prison's surveillance cameras were monitored to remotely "pop" doors open to allow him to move Plaintiffs around the facility, or he obtained permission from master control to open the doors himself. Master control was staffed at all times, and the surveillance cameras provided a view of most of the prison, including the area in front of the washer and dryer where Spurlock was raped. But Townes also took advantage of "blind spots" beyond range of the surveillance cameras, such as the officers' break room where he took Carrera to rape her.

{4} CCA policies allowed male corrections officers to escort female inmates around the facility alone. Prison rules that required male officers to announce their presence when they entered a housing unit and to maintain physical distance between officers and inmates were not enforced, and inmates had no effective way to obtain their enforcement. Plaintiffs presented evidence that "[the rapes] could have been . . . detected earlier, and . . . in all likelihood, they may not have occurred" if Townes had not "had so much access to the female inmates."

{5} Townes pleaded guilty in New Mexico state district court to four counts of second-degree criminal sexual penetration in violation of NMSA 1978, Section 30-9-11(E)(2) (2003, amended 2009) and four counts of false imprisonment in violation

of NMSA 1978, Section 30-4-3 (1963). At his plea hearing, he stipulated to the truth of the allegations contained in the indictment on these eight counts, including that he had unlawfully restrained or confined Plaintiffs and caused them to engage in sexual intercourse while they were inmates and while he was in a position of authority over them and that he was able to use his authority to coerce Plaintiffs to submit to the acts.

{6} Plaintiffs filed suit in the United States District Court against Townes, CCA, and Wagner, seeking compensatory and punitive damages for the violation of Plaintiffs' Eighth Amendment civil rights under 42 U.S.C. § 1983 (2012), in addition to various state tort law claims. The federal district court concluded that Townes was judicially estopped from contesting the facts that he had specifically admitted during his plea hearing, including that he had intentionally restrained or confined Plaintiffs without their consent and had sexually assaulted them. On the basis of those admitted facts the court granted judgment as a matter of law against Townes on Plaintiffs' Eighth Amendment claim and on Plaintiffs' state tort law claims for the intentional torts of sexual assault and false imprisonment.

{7} The district court declined to hold the Third-Party Defendants CCA and Wagner vicariously liable for the judgments against Townes because the intentional

3

torts were outside the scope of his employment. But the court did rule that the negligence of CCA and Wagner in failing to properly supervise Townes would make them liable for the damages he had caused. *See Medina v. Graham's Cowboys, Inc.*, 1992-NMCA-016, ¶ 21, 113 N.M. 471, 827 P.2d 859 (holding that the doctrine of respondeat superior could be extended to require "an employer who has negligently hired an employee to pay for all damages arising from an intentional tort of the employee when the tort was a reasonably foreseeable result of the negligent hiring"). The jury found CCA and Wagner not liable under the Eighth Amendment but liable for negligent supervision of Townes as to Plaintiffs Spurlock and Carrasco.

{8} The jury awarded each Plaintiff compensatory and punitive damages. Separate punitive damages were awarded against Townes and against CCA and Wagner, but the amount of the compensatory damages was based on the harm that was done to Plaintiffs and was not separately measured for each theory of liability. *See Clappier v. Flynn*, 605 F.2d 519, 529 (10th Cir. 1979) (holding that one compensatory damages award is appropriate when Eighth Amendment guarantees under § 1983 and state tort law on negligence protect the same interests, even when the defendants were found liable under both theories). Townes was held liable for compensatory damages under both § 1983 and state tort law.

{9} The federal district court ruled that any comparative negligence of Plaintiffs could not be considered in awarding damages against Townes but that an award against CCA and Wagner based on negligent supervision was subject to reduction for fault on the part of Plaintiffs. The jury apportioned a percentage of fault to Plaintiffs Spurlock and Carrasco as compared to CCA and Wagner, reducing the final compensatory damages award against CCA and Wagner accordingly. Because CCA and Wagner were not found liable for negligent supervision as to Plaintiff Carrera, she was awarded compensatory and punitive damages against Townes only.

{10} The Tenth Circuit Court of Appeals, sitting in review of posttrial motions in this case, certified to this Court the following question:

> When an inmate is sexually assaulted by a corrections officer, does New Mexico recognize the affirmative defense of comparative fault—permitting the comparison of the correctional facility/employer's alleged negligence with the alleged fault of the inmate victim—for the purpose of reducing the amount of a judgment entered on the inmate's state-law claim of negligent supervision of the tortfeasor-officer by the employer?

*Spurlock*, 594 F. App'x at 465; *see* Rule 12-607(A)(1) NMRA (allowing this Court to answer questions of law certified to it by a court of the United States).

{11} "Our goal in answering a question certified by the federal courts is not to finally dispose of all relevant issues in a case" but is rather to resolve "unsettled

5

matters of New Mexico law." *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶¶ 17, 24, 124 N.M. 640, 954 P.2d 72 (concluding that this Court need not resolve the merits of a question certified by a federal court where the New Mexico Legislature had enacted a statute that rendered the question moot). We exercise our discretion to reformulate the question, *see* Rule 12-607(C)(4), and we limit our answer to the context of this case where a corrections officer employed by a privately run prison sexually assaulted inmates in the facility while on duty. Within this narrow scope, we hold that under New Mexico law CCA and Wagner are vicariously liable for all compensatory damages caused by the corrections-officer employee when he was aided in accomplishing his assaults by his agency relationship with CCA and Wagner who were his employers. No affirmative defense of comparative fault is available in this context because fault attributed to intentional tortfeasor Townes is not subject to reduction based on comparative negligence and because no fault on the part of the vicariously-liable CCA and Wagner is required. *See* NMSA 1978, § 41-3A-1(C)(1)-(2) (1987) (retaining joint and several liability for intentional tortfeasors and for vicarious liability); *Garcia v. Gordon*, 2004-NMCA-114, ¶¶ 6, 9-10, 136 N.M. 394, 98 P.3d 1044 (stating that New Mexico has statutorily adopted the majority rule that "fault should not be apportioned between an intentional

6

tortfeasor and a merely negligent victim" but allowing damages for false imprisonment to be reduced based on the fault of the plaintiff only because the defendant had not acted with the intention of inflicting injury or damage (internal quotation marks and citation omitted)); *Medina*, 1992-NMCA-016, ¶ 17 ("Because liability is not predicated on the fault of the employer, the abolition of joint and several liability does not eliminate [an employer's] respondeat superior liability.").

{12}    We decline to determine the availability of an affirmative defense alleging Plaintiffs' comparative fault in a claim of liability for negligent supervision of an intentional tortfeasor because the vicarious liability of CCA and Wagner makes this determination unnecessary. *See Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 47, 301 P.3d 387 ("[P]laintiffs may not . . . receive compensation twice for the same injury."); *Allstate Ins. Co. v. Stone*, 1993-NMSC-066, ¶ 7, 116 N.M. 464, 863 P.2d 1085 (declining to address unnecessary certified issues to avoid issuing an advisory opinion). Neither do we reach Plaintiffs' contention that CCA and Wagner are statutorily liable under New Mexico's mandatory financial responsibility statute for private correctional facilities. NMSA 1978, § 33-1-17(D)(2) (2013).

**II.    DISCUSSION**

{13} "Under basic respondeat superior principles, an employer is liable for an employee's torts committed within the scope of his or her employment. "*Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 29, 135 N.M. 539, 91 P.3d 58. The act of an employee is within the scope of employment if

> 1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and
> 2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

UJI 13-407 NMRA. "[A]n employer is not generally liable for an employee's intentional torts because an employee who intentionally injures another individual is generally considered to be acting outside the scope of his or her employment." *Ocana*, 2004-NMSC-018, ¶ 29.

{14} Nevertheless, "[u]nder the aided-in-agency theory, an employer may be held liable for the intentional torts of an employee acting outside the scope of his or her employment if the employee 'was aided in accomplishing the tort by the existence of the agency relation.'" *Id.* ¶ 30 (quoting the Restatement (Second) of Agency § 219(2)(d) (1958)). New Mexico courts have frequently relied on the Restatement (Second) of Agency when deciding issues involving respondeat superior, and in *Ocana* we adopted the Restatement's aided-in-agency theory as consistent with the

policies underlying New Mexico tort law that favor compensation of an injured victim, redistribution of economic loss, and deterrence of unreasonable and immoral conduct. *See* 2004-NMSC-018, ¶¶ 30-31.

{15}     While *Ocana* involved an employee's claims of sexual harassment by her supervisor, we adopted the aided-in-agency theory in our consideration of the plaintiff's common-law claims for the intentional torts of assault, battery, and intentional infliction of emotional distress, and we did not limit the rule to the sexual harassment context. *See id.* ¶ 29. "[T]he basis for the aided-in-agency theory is that the employee 'may be able to cause harm *because of* [*the employee's*] *position as agent*' of the employer." *Id.* ¶ 32 (quoting the Restatement (Second) of Agency § 219(2) cmt. e).

{16}     We acknowledge the concerns of other courts "that aided-in-agency as a theory independent of apparent authority risks an unjustified expansion of employer tort liability for acts of employees." *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1199 (Alaska 2009). We agree that the theory should not apply to all situations in which the commission of a tort is facilitated by the tortfeasor's employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760 (1998) ("In a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the

9

existence of the agency relation: Proximity and regular contact may afford a captive pool of potential victims."). "[M]ore than the mere existence of the employment relation [must] aid[] in commission of the harassment." *Id.*; *see also Peña v. Greffet*, 110 F. Supp. 3d 1103, 1124 (D. N.M. 2015) ("[T]he tort cannot be of a nature that a mere coworker could have just as easily committed; rather, a specifically supervisory relationship must have aided the tort's commission.").

{17}  But sexual harassment of a subordinate by a supervisor is not the only context in which job-created control over another justifies holding the employer who vests the tortfeasor with that authority vicariously liable for the damages caused by its abuse. We thus follow *Ayuluk* in limiting our adoption of aided-in-agency principles extending vicarious liability to "cases where an employee has by reason of his employment substantial power or authority to control important elements of a vulnerable tort victim's life or livelihood." 201 P.3d at 1199.

> Requiring a relationship of job-created control between a tortfeasor, and his or her victim, holds the employer liable only when the tortfeasor has capitalized on the *power* that the employer gave the tortfeasor, and not merely the opportunity. Opportunity is generic: a factory worker who sexually assaults the coworker next to him on the assembly line might only have been able to do so because the factory stationed him next to his victim, but the factory did not increase the odds—at least as they were knowable to the employer at the time—of either that specific worker committing sexual assault or of that specific coworker being sexually assaulted. On the other hand, when an employer vests an

10

employee with power over another person—whether the other person is a subordinate employee or a non-employee third party, like an inmate—the employer enables torts that might not otherwise happen—torts that are, essentially, an abuse of that power. There is danger inherent in granting one person extraordinary power over another, and the granting of that power should, thus, carry with it some accountability.

*Peña*, 110 F. Supp. at 1135. We agree also that "[w]hether a particular type of case falls within this category should be a question for the court, not a jury." *Ayuluk*, 201 P.3d at 1199.

{18}    In order to prevail under an aided-in-agency theory, Plaintiffs had to prove that Townes was aided in accomplishing his assaults by his status as a corrections officer that afforded him substantial power and control over Plaintiffs. The "extraordinary power" wielded by law enforcement over ordinary citizens has influenced many courts to hold the officers' employers vicariously liable for the abuse of that power. *See, e.g.*, *Doe v. Forrest*, 2004 VT 37, ¶¶ 34-38, 853 A.2d 48 (discussing cases that found vicarious liability for sexual assaults by corrections and police officers). Corrections officers like Townes are vested with extraordinary authority over inmates, substantially more than the authority of police officers over nonincarcerated citizens.

A prison guard has even more employer-vested power over an inmate than a private-sector supervisor has over a subordinate: the control that

> a prison guard exerts over an inmate extends into virtually every facet of the inmate's life; the relationship, unlike a private-sector supervisor-subordinate relationship, often involves the use of legitimate bodily force and physical violence; and, unlike a private-sector employee, an inmate cannot simply quit the job of being a prisoner.

*Peña*, 110 F. Supp. at 1134. A corrections officer may be, in fact, merely a conduit for the authority of the State as delegated to the private prison and exercised through the person of the officer, but the practical effect of this relationship is to place prison inmates under the continuous and nearly total control of the officer. *See id.* at 1135 ("[A]n inmate . . . likely feels as if she is not merely under the State's control, by way of its guards, but that she is under the control of the guard himself.").

{19} "[T]he prison guard-inmate relationship is an irreducibly unpleasant one . . . oriented around captivity and control . . . ." *Id.* at 1136. For two decades, the New Mexico Legislature has recognized the potential for abuse inherent in this relationship, specifically in the form of sexual assault. *See* § 30-9-11(E)(2) ("Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated . . . on an inmate confined in a correctional facility or jail when the perpetrator is in a position of authority over the inmate."). The essential elements of Subsection (E)(2) are a legislative acknowledgment of the power disparity between inmate and corrections officer and a recognition that this disparity not only facilitates

12

sexual assault of the vulnerable party but makes meaningful voluntary consent to sexual intercourse an unrealistic inquiry.

{20}    Townes had the authority to enter Plaintiffs' residential block unescorted and unannounced, to remove Plaintiffs from their cells or from their work stations, to move Plaintiffs around the facility including to out-of-the-way areas, to exercise his authority at any hour of the day or night, and to bestow favors or impose sanctions for inmate behavior. Townes approached Plaintiff Spurlock multiple times when she was alone on work detail and assaulted her at her work station. He removed Plaintiffs Carrasco and Carrera from their cells and took them to other locations to rape them. Plaintiffs were told to follow the directions of the corrections officers quickly, without question or argument, and feared retaliation if they did not obey Townes. Inmates who challenge the actions of an officer face stereotyping that reduces their credibility and increases the risk of retaliation for their complaints because they are not taken seriously. *Peña*, 110 F. Supp. at 1135 ("The credibility gap between prison guards and inmates is enormous in everyone's eyes, but especially in the eyes of the jail employees directly responsible for handling complaints—who are, after all, the tortfeasor's coworkers."). Although CCA did have a grievance procedure in place, Plaintiffs presented evidence that it was not effectively followed and that they had

experienced retaliation for complaints. Based on these facts, we conclude that Townes used the authority vested in him by his position as a corrections officer to coerce Plaintiffs, who were inmates entrusted to his care, into submitting to sexual assault and false imprisonment.

## III.   CONCLUSION

{21}   Because Townes was aided in the commission of his intentional torts by the agency afforded to him by his employers, Third-Party Defendants CCA and Wagner are vicariously liable under New Mexico law for all compensatory damages Plaintiffs suffered from these assaults. We do not decide whether defendants' vicarious liability extends to the punitive damages awarded against Townes because the question certified to this Court and addressed by the parties concerned only the compensatory award. Because CCA and Wagner are fully liable for that award under vicarious liability principles regardless of any direct negligence on their part, we do not reach the claim of negligent supervision nor any theories of comparative fault that might have been applicable to that theory.

{22}   **IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

14

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

**JUDITH K. NAKAMURA, Justice, not participating**